[No. 15214-2-II.   Division Two.   December 16, 1993.]

OTTIS HOLWEGNER TRUCKING, *Plaintiff,* v. DON MOSER, ET AL, *Appellants,* THE STATE OF WASHINGTON, *Respondent.*

---

*William L. Shaffer* and *H. Frank Stubbs, Inc., P.S.; Stanley J. Rumbaugh* and *Rumbaugh & Rideout; Roland L. Skala, James D. Mahoney III,* and *Weeks & Skala,* for appellants.

*Christine O. Gregoire, Attorney General,* and *Douglas H. Brown, Assistant,* for respondent.

ALEXANDER, C.J. — Todd Marcus Phillips et al. appeal an order of the Skamania County Superior Court granting summary judgment to the State of Washington. They contend that the trial court erred in concluding that the State enjoyed statutory immunity from suit for its alleged negligence in placing too few "impaired clearance signs" on and in advance of a highway tunnel, and in concluding that any such negligence was not the proximate cause of the injuries sustained by Phillips. We affirm.

On February 9, 1988, William R. Waymire was driving a logging truck in a westerly direction on State Route (SR) 14

toward the city of Stevenson. Waymire's truck was unloaded, but it contained "log bunks"[1] that extended to a height of 13 feet 6 inches from the roadway surface. As Waymire approached the east end of a tunnel, known as tunnel 1,[2] he observed a small pickup truck traveling eastbound (toward Waymire) on SR 14. The pickup was straddling the center line and this, apparently, caused Waymire to swerve to the right to avoid a collision. As a consequence, the log bunks on Waymire's truck struck the outside of the tunnel arch, broke off, and slid through the tunnel coming to rest in the center of the road past the west end of the tunnel.

At this time, Todd Phillips was traveling in an easterly direction on SR 14 in his automobile. As he approached the west entrance of tunnel 1, his car struck the log bunks from Waymire's truck that were lying in the roadway. This caused Phillips's car to career into the tunnel. Meanwhile, a second logging truck, driven by Clay Moser and owned by Ottis Holwegner Trucking, entered the tunnel traveling westbound (toward Phillips). Moser had been slowing his truck down as he entered the tunnel because he had heard a warning from Waymire over a CB radio. Moser brought his truck to a "virtual standstill" before reaching the west side of the tunnel. Phillips's car then struck Moser's truck in the tunnel. This caused Phillips's car to bounce backward, causing injury to Phillips.

Tunnel 1 is arch shaped and has impaired vertical clearance below the 14-foot maximum vehicle height[3] in some parts. On the east approach to tunnel 1, there is a warning sign on the right side of the road, approximately 658 feet before the tunnel entrance. It informs motorists that vertical

---

[1]The appellant's brief indicates that "log bunks" are retaining stakes that hold logs in place while they are being transported on a logging truck.

[2]Tunnel 1 is the westernmost of a series of tunnels on SR 14 that were built around 1935.

[3]RCW 46.44.020 provides in part that:
"It is unlawful for any vehicle unladen or with load to exceed a height of fourteen feet above the level surface upon which the vehicle stands".

clearance in some parts of the tunnel is restricted to 12 feet 9 inches.[4] A second warning sign is located on the right side of the east face of the tunnel. According to a traffic operations engineer who submitted an affidavit for the State of Washington, this sign contains an arrow that points to a spot directly above the outside edge of the 7-inch-wide fogline, informing motorists of the exact location of the 12-foot-9-inch impaired clearance.

Holwegner Trucking commenced suit in Skamania County Superior Court against Waymire and Don and Marie Moser (no relation to Clay Moser), the owners of the Waymire truck. Waymire and the Mosers then filed a third party claim for contribution against Phillips and the State of Washington. The third party defendant, Phillips, also filed a fourth party plaintiff's claim against the State of Washington. The third and fourth party claimants alleged that the State had negligently failed to place sufficient impaired clearance signs on tunnel 1.

The State moved for summary judgment, claiming statutory immunity and lack of proximate cause. In support of its motion, it submitted an affidavit from Carl Ruff (a transportation engineer employed by the State of Washington), a road log video, and several declarations from Jerry Sorrell (a traffic operations engineer employed by the State of Washington). The State also submitted an affidavit from Waymire, as well as his deposition. In opposition to the summary judgment motion, Phillips submitted another affidavit from Waymire and an affidavit from Edward Stevens, a private highway engineer. The trial court granted the State's motion. Phillips appeals.[5]

---

[4]The warning sign is 36 by 36 inches, diamond shaped, and black on yellow. The State asserts that the design of the sign complies with the standard recommended by section 2C-34 of the U.S. Dep't of Transp., *Manual on Uniform Traffic Control Devices* (1988). Phillips offered no evidence to rebut this assertion.

[5]Although Waymire and Don and Marie Moser have joined Phillips's appeal and his brief, pursuant to RAP 10.1(g), we have referred to the appellants throughout as Phillips. Holwegner Trucking has not participated in the appeal.

Summary judgment is properly granted if the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980); CR 56(c). A material fact is one upon which the outcome of the litigation depends. *Wojcik v. Chrysler Corp.*, 50 Wn. App. 849, 853, 751 P.2d 854 (1988). The court must consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Dickinson v. Edwards*, 105 Wn.2d 457, 461, 716 P.2d 814 (1986). The motion should be granted only if a reasonable person could reach but one conclusion. *Barrie*, 94 Wn.2d at 642. Although issues of negligence and proximate cause are generally not susceptible to summary judgment, they may be decided based on the above standards. *Wojcik*, 50 Wn. App. at 854. On the issue of summary judgment, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

## I
### NEGLIGENCE

The State, citing RCW 46.44.020, asserts that it has statutory immunity from this suit for negligence. Phillips counters that there are material issues of fact that must be resolved by the trier of fact before it can be determined if the State has immunity under the aforementioned statute.

Generally, the State must exercise ordinary care in maintaining highways in such condition that they are reasonably safe for persons using them in the proper manner and exercising ordinary care for their own safety. *Stewart v. State*, 92 Wn.2d 285, 299, 597 P.2d 101 (1979). The Legislature has, by statute, set forth more explicit requirements that the State must observe in regard to warning motorists about areas on highways where vertical clearance is impaired. At the same time, this statute purports to establish immunity for the State upon a showing of compliance with its terms. The State contends that the statute takes into account the existence of older tunnels that do not provide 14 feet or more

of vertical clearance. In that regard, RCW 46.44.020 provides as follows:

**Maximum height — Impaired clearance signs.**

It is unlawful for any vehicle unladen or with load to exceed a height of fourteen feet above the level surface upon which the vehicle stands. . . . The provisions of this section do not relieve the owner or operator of a vehicle or combination of vehicles from the exercise of due care in determining that sufficient vertical clearance is provided upon the public highways where the vehicle or combination of vehicles is being operated; and no liability may attach to the state . . . by reason of any damage or injury to persons or property by reason of the existence of any structure over or across any public highway where the vertical clearance above the roadway is fourteen feet or more; or, where the vertical clearance is less than fourteen feet, if impaired clearance signs of a design approved by the state department of transportation are erected and maintained on the right side of any such public highway in accordance with the manual of uniform traffic control devices for streets and highways as adopted by the state department of transportation under chapter 47.36 RCW.

The U.S. Dep't of Transp., *Manual on Uniform Traffic Control Devices* (1988) (MUTCD), which is referenced in the statute, provides in section 2C-34 as follows:

**Low Clearance Sign (W12-2)**

The Low Clearance sign is intended for use to warn vehicle operators of clearances less than the maximum vehicle height permitted plus 12 inches. It may be erected on or in advance of the structure. If a sign is placed on the structure, it may be a rectangular shape with the legend (12) FT (6) IN.

The actual clearance is normally shown on the sign to the nearest inch not exceeding the actual clearance. However, in areas that experience changes in temperature causing frost action, an allowance, not exceeding 3 inches, for this condition, is recommended.

Where the clearance is less than the legal limit, a sign to that effect should be placed at the nearest intersecting road or wide point in the road at which a vehicle can detour or turn around.

In the case of an arch or other structure under which the clearance varies greatly, two or more signs should be used as necessary on the structure itself, to give information as to the clearance over the entire roadway.

The State advances alternative arguments in an effort to persuade us that RCW 46.44.020 provides it statutory immu-

nity from liability in this case. First, it contends that the impaired vertical clearance (below 14 feet) in tunnel 1 exists only outside of the roadway and within the foglines, but not in the roadway. That being the case, the State asserts no signing was required under RCW 46.44.020 because the entire "roadway" had vertical clearance over 14 feet.

The MUTCD defines a roadway as "[t]hat portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder." MUTCD § 1A-9. The evidence presented to the court at summary judgment indicates that the 12 foot 9 inches impaired clearance was measured from the outside edge of the fogline, a location that is outside the roadway. The State also submitted measurements taken by Carl Ruff that show a vertical clearance of 13 feet 8½ inches at a spot 12 inches inside the guardrail. Finally, the State submitted measurements taken by Ruff that show a vertical clearance of 14 feet 7 inches at a spot 24 inches inside the guardrail. The State asserts that because the inside edge of the fogline was 18 inches inside the guardrail, the height of the tunnel was over 14 feet at every point on the "roadway." Consequently, it argues, the State's placement of 12 feet 9 inches clearance signs both on the tunnel and in advance of the tunnel was more than it was required to do.

The flaw in this argument is that the record contains no evidence as to the *exact* point where the vertical clearance in the tunnel exceeds 14 feet. We have not been provided with any information about the curvature of the arch. Absent more precise measurements, we are unable to conclude that merely because the vertical distance is 12 feet 9 inches at the outside edge of the fogline (11 inches inside the guardrail), 13 feet 8½ inches at a point 12 inches inside the guardrail, and 14 feet 7 inches at a point 24 inches inside the guardrail, the height is necessarily over 14 feet where the roadway begins at a point 18 inches inside the guardrail or at all points on the roadway.[6] We conclude, therefore, that

---

[6]In any event, we perceive that measurements of vertical clearance submitted by the State's two experts are inconsistent. In Sorrell's affidavit, he said the

the State has not factually established immunity under that part of RCW 46.44.020 which says:

> [N]o liability may attach to the state . . . by reason of any damage or injury to persons or property by reason of the existence of any structure over or across any public highway where the vertical clearance above the roadway is fourteen feet or more . . ..

The State contends alternatively that even if the vertical clearance over the roadway is less than 14 feet in some places in the tunnel, it complied with the requirements of the second part of RCW 46.44.020 and thus, established immunity. In support of that argument, the State asserts that it complied with the statute by placing an impaired clearance sign on the right side of the highway in advance of the tunnel and another sign on the face of the tunnel. Although the statute provides that the impaired clearance sign must be erected in accordance with the MUTCD, the State observes that the MUTCD section on low clearance signs does not contain any mandatory requirements. Indeed, the provisions of the pertinent MUTCD section are phrased in terms of "should" and "may". "Should" is defined by the MUTCD as "recommended but not mandatory". MUTCD § 1A-5. "May" is defined by the MUTCD as "a permissive condition". (Italics omitted.) MUTCD § 1A-5. Further, the low clearance sign on the right side of the road *was* of the type, size, and distance from the tunnel suggested by the MUTCD.

Phillips maintains that the placement of an impaired clearance sign on the right side of the road and on the face of the tunnel was not sufficient compliance with RCW 46.44.020 to provide the State with immunity. He contends that the State had to comply with the terms of the MUTCD for low clearance signs. Phillips asserts that even though the MUTCD does not contain mandatory requirements, a jury could find that the

---

vertical clearance was 12 feet 9 inches at the outside edge of the fogline. Carl Ruff stated in his affidavit that he found that the outside edge of the fogline was 11 inches from the guardrail at the edge of the tunnel. Ruff found that the vertical clearance 12 inches from the guardrail at the edge of the tunnel was 13 feet 8½ inches. This increase of 1 foot of vertical clearance over 1 inch of distance appears implausible.

State's failure to follow the MUTCD discretionary provisions amounted to negligence. Phillips contends that the State failed to comply with the MUTCD in two respects: It failed to place a second warning sign on the tunnel itself, and it failed to place a warning sign at the closest prior intersection before the tunnel, which would allow motorists to turn around. MUTCD § 2C-34.

Failure to comply with uniform state traffic control standards can be evidence of negligence. *Wojcik*, 50 Wn. App. at 855; *Kitt v. Yakima Cy.*, 93 Wn.2d 670, 673-74, 611 P.2d 1234 (1980).[7] In *Wojcik*, we found that an expert witness's opinion that the absence of a double yellow line at a particular point in the roadway did not meet the MUTCD standards and was therefore unsafe created an issue of negligence for a jury to decide. *Wojcik*, 50 Wn. App. at 855. Here, Phillips presented the affidavit of Edward Stevens, an engineer, who concluded that the State did not comply with the MUTCD because there was no second sign on the tunnel face, and no warning sign at the previous intersection. Phillips asserts that a jury question has been raised as to the State's compliance with the MUTCD.

■ If RCW 46.44.020 did not exist or if it mandated compliance or at least consideration of all MUTCD provisions regarding low clearance signs, Stevens's affidavit would create a genuine issue of material fact for a jury as to the State's compliance with the MUTCD. Even though much of the MUTCD language is advisory, a jury could find that the State was negligent in failing to properly sign the tunnel. However, this conclusion follows only if RCW 46.44.020 requires the State to comply with the MUTCD low clearance sign provisions.

---

[7] In both of the cited cases, the failure to comply with uniform standards was considered negligence as a matter of law. However, the 1986 tort reform act provided that failure to comply with state statutes or ordinances was only evidence of negligence. RCW 5.40.050.

We interpret RCW 46.44.020 to require only that the State place a warning sign on the right side of the road at the proper distance in advance of the tunnel.[8] That sign must be erected and maintained in accordance with the MUTCD. The uncontested conclusion of one of the State's affidavits is that the warning sign on the right side of the road did comply with the MUTCD standards for both design and placement.[9]

This interpretation of RCW 46.44.020 distinguishes this case from *Wojcik* and *Kitt*. In those cases, no statutes were involved, only allegations of a failure to comply with MUTCD standards. *See also Grimsrud v. State*, 63 Wn. App. 546, 821 P.2d 513 (1991) (whether State met MUTCD provision of giving "adequate warning" in placement of regulatory signs was question for jury). Here, RCW 46.44.020, which requires only impaired clearance signs on the right side of the road in advance of the tunnel, takes precedence over other MUTCD standards on low clearance signs.

---

[8]Support for this interpretation is found in the prior formulation of RCW 46.44.020. Before 1977, the relevant portion of the statute provided as follows: no liability shall attach to the state . . . where such vertical clearance is less than fourteen feet, if impaired clearance signs of a design approved by the Washington state highway commission are erected and maintained on the right side of any such public highway: *In cities and towns at a distance of not less than two hundred feet and not more than three hundred feet; and in rural areas at a distance of not less than three hundred fifty feet and not more than five hundred feet, from each side of such structure.* (Italics ours.) Former RCW 46.44.020, Laws of 1975-76, 2d Ex. Sess., ch. 64, § 7. In 1977, the Legislature replaced this highlighted portion with the current language referring to the MUTCD. Because the former language regulated only the distance that a low clearance sign must be placed before the tunnel, the new reference to the MUTCD is likely designed to provide guidance on the same issue — the distance that the impaired clearance sign must be placed before the tunnel or other impaired vertical clearance. The State complied with the MUTCD by placing the 12 feet 9 inches impaired clearance sign 658 feet before the tunnel.

[9]We take note of the fact that RCW 46.44.020 provides for the placement of "impaired clearance *signs*" (italics ours). Even if the statute requires the placement of more than one sign on the right side of the road, here the State had two signs, one in advance of the tunnel and one on the east face of tunnel 1.

## II
### PROXIMATE CAUSE

Phillips asserts that a jury could find that the State's failure to place a second impaired vertical clearance sign on the face of the tunnel was a proximate cause of his injuries. While we have some doubts that an additional vertical clearance sign on the face of the tunnel would have had an effect on Waymire's conduct, in light of our conclusion that the State has immunity for its negligence, if any, pursuant to RCW 46.44.020, we need not address that issue.

We, therefore, affirm the trial court's grant of summary judgment on the issue of negligence, concluding that the State complied with the statute's provisions regarding signage.

Affirmed.

MORGAN and HOUGHTON, JJ., concur.