# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-00762-SCT

*RANDY E. JONES*

*v.*

*PANOLA COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/13/96 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN B. GILLIS |
| ATTORNEYS FOR APPELLEE: | BENJAMIN E. GRIFFITH |
| | DANIEL J. GRIFFITH |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED - 5/14/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/17/98 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### STATEMENT OF THE FACTS AND CASE

¶1. Randy E. Jones ("Jones") was injured on September 21, 1993 when his pickup truck collided with a gravel pile located on Sardis Landfill Road in Panola County, Mississippi. The gravel pile had been built by the Panola County road department as a barrier to an out-of-service bridge located on the road. The county had placed "Bridge Out" and "Road Closed" traffic warning signs on the road, but the signs had been knocked down at the time of the accident. Jones suffered fractures, lacerations, and contusions to his face as a result of the accident, and his injuries required surgery at a hospital in Memphis.

¶2. Jones' medical expenses totaled $122,919.82, and he also suffered property damages, lost wages, and partial impairment as a result of the accident. Jones filed suit against Panola County on September 6, 1994, alleging negligence on the part of the County. A jury trial was held on March 11, 1996 through March 13, 1996, and the jury returned a verdict for Panola County after less than 30 minutes of deliberation. On July 8, 1996, Jones filed an appeal to this Court.

### ISSUES

**I. Whether the trial court erred in denying Jones' motion for new trial on grounds that the trial court committed reversible error by denying Jones' motion *in limine* concerning seat belt use evidence and in allowing evidence of Jones' nonuse of a safety belt at the time of the accident to be presented at trial.**

¶3. Jones argues that the trial court committed reversible error in denying his motion *in limine* to prohibit the admission at trial of evidence that he was not wearing a seat belt at the time of the accident. Jones filed this motion on March 11, 1996, citing Miss. Code Ann. § 63-2-3 (1996), which provides that:

> This chapter shall not be construed to create a duty, standard of care, right or liability between the operator and passenger of any passenger motor vehicle which is not recognized under the laws of the State of Mississippi as such laws exist on the date of passage of this chapter or as such laws may at any time thereafter be constituted by statute or court decision. Failure to provide and use a seat belt restraint device or system shall not be considered contributory or comparative negligence, nor shall the violation be entered on the driving record of any individual.

Panola County's sole arguments in response to Jones' objections are procedural. The County argues that:

> Jones failed to make a contemporaneous objection to the County's question on cross-examination concerning seatbelt use, and if he genuinely thought he was prejudiced by such testimony, he failed to make the required Motion for a Mistrial. In any event, any claimed error arising from such limited cross-examination of Jones on the legitimate inquiry of whether or not he was wearing a seatbelt did not result in a miscarriage of justice. Jones waived any claimed error in this regard.

The County's argument has been squarely rejected by this Court in recent decisions. In ***Kettle v. State***, 641 So.2d 746, 748 (Miss. 1994), this Court held that the filing of a motion in limine regarding the introduction of evidence properly preserved the issue for appeal and that a contemporaneous objection was not necessary. ***See also*** *[Lacy v. State](), 700 So.2d 602, 606 (Miss. 1997)*. It is thus clear that Jones was not required to make a contemporaneous objection in order to preserve this issue for appeal, nor was he required to make a motion for mistrial, given that his motion in limine on this issue had already been rejected by the trial judge.

¶4. With regard to the substantive merits of Jones' objection, the County makes no arguments in opposition to Jones' claim that the introduction of the seat belt use evidence was contrary to statute. This Court recently held in *[Roberts v. Grafe Auto Co.](), 701 So.2d 1093 (Miss. 1997)* that:

> Clearly the statute [ § 63-2-3] directs that evidence of the non-use of a seat belt shall not be presented to the jury. Although, defense counsel did not repeatedly argue this point, the question was asked and answered, thereby tainting the jury's mind that Roberts contributed to her injuries by not wearing a seat belt. ... On remand, no statement, argument or evidence is to be presented to the jury regarding the non-use of the seat belt.

*Id.* at 1100. **Roberts** clearly indicates that the trial court committed error in admitting the evidence of seat belt non-usage in the present case. This Court concludes that this error constitutes reversible error in the present case, given that, as in **Roberts**, the jury was tainted by evidence of seat-belt non-usage which was admitted in contravention of statute.

> **II. Whether the trial court erred in denying Jones' motion for new trial on the grounds that the trial court committed reversible error in granting jury instruction 14 (jury instruction D-2) in the absence of credible evidence on the issue of superseding cause, and where the evidence was undisputed that it was foreseeable that theft, displacement, and vandalism of road warning signs in Panola County, Mississippi was reasonably foreseeable inasmuch as the county road plan, a document offered and received in evidence at trial, explicitly contemplated and planned for said occurrences.**

¶5. Jones argues that the trial court committed reversible error in submitting instruction 14 to the jury on the issue of superseding cause. Instruction 14 reads as follows:

> The Court instructs the jury that a superseding cause is an independent and unforeseen act by a third person which follows the Defendant's negligence and which is a substantial factor in causing the Plaintiff's injuries. A superseding cause becomes the proximate cause for the Plaintiff's injuries and the Defendant's negligence is a remote cause for which he is not liable. Thus, if you find from the preponderance of the evidence in this case that the Defendant was negligent in failing to discharge its duty to maintain its roads, streets and highways in a reasonably safe condition or in failing to discharge its duty to warn motorists using its roads, streets, and highways of dangerous conditions on said roads, streets, and highways of which Defendant had either actual or constructive knowledge, or in failing to discharge its duty to maintain its roads, streets, and highways in a reasonably safe condition for use by Plaintiff Jones and other motorists, but that an independent and unforeseeable act by a third person in removing the "Road Closed" sign and/or the "Bridge Out" sign followed the defendant's negligent acts, if any, and was a substantial factor in causing the Plaintiff's injuries, then the Defendant is not liable for the injuries proximately resulting from the superseding cause, and your verdict shall be for the Defendant.

¶6. Jones argues that:

> Instruction 14 should not have been given to the jury since there was no credible evidence presented that an `independent and unforeseeable' act of a third person resulted in the removal of the Road Closed sign or Bridge Out Sign on Sardis Landfill Road prior to the accident. Jones submits that, since instruction 14 is directed at alleged acts of vandalism, the instruction is not warranted since the proof at trial showed that vandalism *was* foreseeable.

Jones notes that Sam Dodd, the Road Manager at the time of the accident, testified that he was aware of signs being knocked down, and he also notes that the Panola County Road Plan acknowledged the possibility of vandalism and required the replacement of stolen or destroyed signs.

¶7. In the view of this Court, the issue of vandalism of signs is best considered by the jury in the context of the duty owed by the County rather than in the context of a superseding cause instruction. It is undisputed that the vandalism of signs is a foreseeable occurrence, and this Court accordingly

agrees with Jones that no reasonable jury could conclude that the vandalism of a sign was unforeseeable. At the same time, however, the County should not be expected to respond instantaneously to repair any acts of vandalism which might arise, even though such acts are foreseeable.

¶8. Stated differently, the County should not be held liable for accidents which result from vandalism which it could not have been reasonably expected to repair by time of the accident. This Court accordingly directs that the trial court on remand not issue a superseding cause instruction, but the court should properly permit the jury to consider the circumstances of any acts of vandalism in determining whether the County breached its duty of care in the present case. This Court does not hold that the granting of the superseding cause instruction alone constitutes reversible error, but given that this Court has elected to reverse and remand on the first point of error, we take the opportunity to instruct the trial court in this regard.

> **III. Whether the trial court erred in denying Jones' motion for new trial on the grounds that the trial court committed reversible error in granting a defense motion *in limine* and entering an interlocutory order *in limine* which proscribed Jones from offering in evidence portions of the Manual on Uniform Traffic Control Devices (MUTCD) as proof of the applicable standard of care concerning the placement of warning signs and barricades on public roads.**

¶9. Jones argues that the trial court committed reversible error in granting a defense motion *in limine* and in issuing an interlocutory order *in limine* which prevented Jones from offering as evidence portions of the Manual on Uniform Traffic Control Devices (MUTCD). In *Fritz v. Howard Township*, 570 N.W.2d 240 (S.D. 1997), the Supreme Court of South Dakota very recently noted that:

> The MUTCD is a national publication promulgated by the Federal Highway Administration and is the "national standard for all traffic control devices installed on any street, highway, or bicycle trail open to public travel." The States may draft their own manual, so long as it is in "substantial conformance" with the national MUTCD. . . .

*Fritz*, 570 N.W.2d at 243 (citations omitted). Jones intended to offer the manual as proof of the applicable standard of care with regard to the placement of warning signs and barricades on public roads.

¶10. This Court agrees with Jones that the trial judge committed error in excluding evidence of the MUTCD. Miss. Code Ann. § 63-3-305 (1996) provides that:

> Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications.

> Local authorities in exercising those functions referred to in the preceding paragraph shall be subject to the direction and control of the state highway commission.

This Mississippi Code Section thus provides that traffic control devices on Mississippi "highways" shall conform to the "state manual and specifications." The "state manual" referred to in § 63-5-305 is discussed in Miss. Code Ann. § 63-3-301 (1996), which provides that:

> The commissioner of public safety shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter for use upon highways within this state. Such uniform system shall correlate with and so far as possible conform to the system then current as approved by the American Association of State Highway Officials.

There is no mention in this statute of the MUTCD, but the county apparently does not dispute the contention of Jones' that the MUTCD is the "system . . . approved by the American Association of State Highway Officials."

¶11. A search of nationwide authority involving the "MUTCD" supports Jones' contention that the provisions of this manual should not have been excluded from evidence in the present case. Numerous courts have utilized this manual as the standard for determining the duty owed by a governmental entity in cases such as the one at bar, and, in most cases, the applicability of the provisions is not even disputed. *See Lay v. Kansas Dep't of Transportation*, 928 P.2d 920 (Kan. Ct. App. 1996); *Hamlin v. Norfolk S. Ry. Co.*, 686 So.2d 1115, 1119 (Ala. 1996). As noted by the Supreme Court of South Dakota in *Fritz*, 570 N.W. 2d at 243, 23 Code of Federal Regulations § 655.603 provides that state manuals regulating *all* public streets, including "bicycle trails" must be in substantial conformance with the MUTCD.

¶12. In excluding the provisions of the MUTCD, the trial judge noted that the Legislature has enacted provisions which, in his view, were applicable to Panola County in the present case:

> Mr. Griffith, I think you're correct in your analysis of the statutes which control the county boards of supervisors and the related activities in opening, closing, repairing, etc. of county roads. It seems to me that the statutes in Code Section 65-7-1 on through, I believe, 121 are the controlling statutes as they define county roads and the board of supervisors' duties and responsibilities in regard to those county roads. I think anything applicable to the interstate or state highway system would not be helpful to the jury in this case unless they are governed by the sections of law here that I think the Board of Supervisors are governed by.

Panola County similarly argues that counties of this State are not subject to the official standards set forth in the MUTCD when they are "maintaining and/or temporarily closing secondary gravel roads which are solely within their jurisdiction and are not state, state-aid or federal-aid highways" by virtue of Miss Code Ann. §§ 65-7-1 through 65-7-121.

¶13. The County's arguments are without merit. The provisions of § 65-7-1, et seq. are clearly applicable to the board of supervisors, but there is nothing in these provisions which indicates that they operate to the exclusion of the requirements of the state manual. The County acknowledges the broad definition of "street or highway" in the Mississippi Code, but it argues that an application of the definition to a county gravel road would be "unreasonable." Specifically, the County argues that:

> Title 63, Chapter 3, Rules of the Road, contains a very expansive definition of "street or highway" which Jones asserts as authority for his contention that counties must comply with the

> Manual on Uniform Traffic Control Devices in maintaining gravel roads like the one in question. ... Jones thus urges this Court to interpret this onerous design standard to each and every mile of public road within a county's jurisdiction, not just state, state-aid, and federal-aid highways which are controlled and maintained by them with the express approval of the Commissioner of Public Safety ... but (also) gravel roads like the secondary road at issue.

It is clear, however, that the statutory definition of "street or highway" was in fact intended to encompass the roads and streets other than federal-aid and state-aid highways, and the definition specifically states that it includes "streets of municipalities." There can be no interpretation of the statutory definition "way or place of whatever nature open to the use of the public for the purpose of vehicle travel" which would exclude Sardis Landfill Road. Further, the language of the MUTCD extending the provisions thereof to all streets including "bicycle trails" leaves little room for doubt in the present case. This Court thus concludes that the trial judge erred in disallowing the evidence of the MUTCD.

¶14. This Court directs that, on remand, the relevant MUTCD provisions may properly be considered by a jury as evidence of negligence, albeit not as conclusive evidence thereof. [1]In the view of this Court, the jury should be able to consider the federal guidelines in the context of their own common sense, judgment, and experience in driving local roads, but a verdict should not be granted to Jones based on the guidelines alone. This Court does not issue a holding regarding whether the failure to grant the MUTCD instruction alone would constitute reversible error, but, given that this Court has reversed and remanded on the first point of error, this Court concludes that the jury should consider this evidence on remand.

¶15. **REVERSED AND REMANDED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. This Court notes that most of the guidelines in the MUTCD are phrased in non-mandatory language. In *Ottis Holwegner Trucking v. Moser*, 863 P.2d 609 (Wash. Ct. App. 1993), the Court of Appeals of Washington noted that the provisions of the MUTCD applicable to that case "are phrased in terms of `should,' and `may'. `Should' is defined by the MUTCD as `recommended but not mandatory.' `May' is defined by the MUTCD as 'a permissive condition'." *Holwegner*, 863 P.2d at 613 (citations omitted). The Washington Court accordingly held that the provisions of the MUTCD should be considered by the jury as evidence of possible negligence, but not conclusively so. *Id.* at 614. A similar conclusion was reached by the Supreme Court of Idaho in *Lawton v. City of Pocatello*, 886 P.2d 330, 338 (Idaho 1994). ("[W]e hold once again that a non-mandatory provision of the MUTCD cannot be the basis of a negligence per se jury instruction.").