942 So.2d 165 (2005)
Oliver David CHISOLM, Jr., Oliver David Chisolm, III, Carolyn Elizabeth Chisolm and Kayla Louisa Chisolm, Appellants
v.
MISSISSIPPI DEPARTMENT OF TRANSPORTATION, Appellee.
Linda Pugh, Appellant
v.
Mississippi Department of Transportation, Appellee.
Nos. 2003-CA-02526-COA, 2004-CA-00440-COA.
Court of Appeals of Mississippi.
August 16, 2005.
Rehearing Denied January 24, 2006.
*166 David M. Sessums, attorney for appellants.
G. Kenner Ellis, Greenville, attorney for appellee.
Before LEE, P.J., MYERS and BARNES, JJ.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. The night of April 11, 1999, Priscilla Chisolm drove down Highway 61 South in Sharkey County, Mississippi, accompanied by Linda Pugh. At that time, Great River Stone Company (Great River) was under contract with the Mississippi Department of Transportation to replace a bridge with an underground box culvert. According to Pugh, as the women approached the construction area, Pugh heard a "bump" and then heard Chisolm scream, "I've got it." The right front wheel of the vehicle left the shoulder of the roadway, and as Chisolm attempted to correct the vehicle, the vehicle began a counterclockwise spin. The vehicle flipped, ejecting Chisolm from the driver's seat. Pugh, who was not thrown from the vehicle, testified that she heard Chisolm screaming for help in the darkness. Chisolm did not survive long after the accident, and while Pugh survived, she suffered severe, permanent disabling injuries.
¶ 2. The day after the accident, members of the Pugh family visited the accident scene and found a twelve to eighteen inch bolt lying next to the road. The bolt matched an indentation in the road indicating that the bolt lay partially on the road. According to Pugh, the bolt was found in the area where she recalled hearing the bump, prior to the vehicle spinning out of control.
¶ 3. In October of 1999, Chisolm's heirs filed suit against MDOT and Great River. That month Pugh also filed suit against MDOT and Great River. Both suits alleged that MDOT and Great River were negligent in placing traffic control barrels, failing to provide warning lights, warning signs, barricades, and guardrails, and numerous other allegations of negligence. On November 19, 1999, MDOT moved to consolidate the Pugh and Chisolm cases, however the cases were not consolidated at the trial level. On December 18, 2000, MDOT moved for summary judgment in the Chisolm case, to which the Chisolm heirs filed a timely response. On March 28, 2002, the trial court granted MDOT's motion, finding that Great River was an independent contractor and that MDOT was entitled to sovereign immunity under Mississippi Code Annotated Section 11-46-9(p)(v) and (w)(Rev.2002).[1] It is from this ruling that Chisolm's heirs now appeal.
¶ 4. On February 20, 2002, MDOT moved for summary judgment against Pugh. Pugh responded to the motion, and incorporated by reference the response which was filed by the Chisolm heirs in *167 their response to MDOT's motion for summary judgment. Additionally, on August 5, 2002, Pugh filed a supplemental response to her original response to MDOT's motion for summary judgment. On May 8, 2003, the trial court granted MDOT's motion for summary judgment. On May 19, 2003, the trial court granted Pugh permission to seek an interlocutory appeal; however, the Supreme Court denied the petition on February 25, 2004. Pugh filed a motion for judgment under Rule 54 of the Mississippi Rules of Civil Procedure, and the trial court granted the motion on February 26, 2004. Pugh appeals to this Court, and the Pugh case and the Chisolm case have now been consolidated.[2]
¶ 5. On appeal, Chisolm's heirs and Pugh argue that the trial court erred in granting MDOT's motion for summary judgment, which found that Great River was an independent contractor solely responsible for the construction, maintenance and signage at the accident scene and the MDOT was entitled to sovereign immunity under the MTCA. Finding that summary judgment was premature as to Section 11-46-9(v), we affirm the summary judgment in part and reverse and remand in part.

STANDARD OF REVIEW
¶ 6. "This Court reviews errors of law, which include the proper application of the Mississippi Tort Claims Act, de novo." Fairley v. George County, 800 So.2d 1159,1162 (¶ 6) (Miss.2001). For a summary judgment motion to be granted there must exist no genuine issues of material fact and the moving party must be entitled to judgment as a matter of law. M.R.C.P. 56(c). This Court employs a de novo standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before itadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc. Leflore County v. Givens, 754 So.2d 1223, 1225 (¶ 2) (Miss.2000). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Id. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Id. Otherwise, the motion should be denied. Id. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. Id. Furthermore, the burden of demonstrating that no genuine issue of fact exists is on the moving party, and the non-movant is given the benefit of the doubt. Id.
¶ 7. At this juncture, it is important to note that the cases sub judice were consolidated on appeal by order of the Mississippi Supreme Court. Plaintiffs' counsel supplemented their response to MDOT's motion for summary judgment in the Pugh case, whereas no such supplementation was included in the response to the motion for summary judgment in Chisolm's heirs' case. This supplementation included actual excerpts of deposition testimony which were included in the record. If such excerpts were included in the response to the motion for summary judgment in the Chisolm case, they are not present in the record before this Court. At best, there exists a limited amount of case law addressing the effect an appeal-level consolidation has on the record presented to this Court; however, our supreme court has previously found that when two cases are consolidated and the two records are incorporated, "the facts, argument and the law apply equally to the two cases." City of New Albany v. Ray, *168 417 So.2d 550, 553 (Miss.1982). Thus, we review the record in its entirety as consolidated as we conduct our de novo review of the trial court's grant of summary judgment.

ANALYSIS
I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT, RULING THAT THE GREAT RIVER STONE CO. WAS AN INDEPENDENT CONTRACTOR?
¶ 8. The Mississippi Torts Claim Act (MTCA) was enacted in 1993 to create a limited waiver of sovereign immunity of the state and its political subdivisions. University of Mississippi Medical Center v. Robinson, 876 So.2d 337, 339 (¶ 7) (Miss. 2004).
¶ 9. The MTCA provides, in pertinent part, as follows:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
* * *
(v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care;
(w) Arising out of the absence, condition, malfunction or removal by third parties of any sign, signal, warning device, illumination device, guardrail or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice[.]
Miss.Code Ann. Section 11-46-9(1)(v)(w) (Rev.2002).
¶ 10. We agree with MDOT's assertion that summary judgment was correct regarding sub-section (w). There is nothing in the record which implies that a third party removed signage from the construction area. In a response to a motion for summary judgment, unsubstantiated assertions are not sufficient to create a question of fact. See Watson v. Johnson, 848 So.2d 873, 878 (¶ 18) (Miss.Ct.App. 2002). Thus we agree that summary judgment on this issue was proper.
¶ 11. Under the plain language of section (v), MDOT and its employees shall not be liable for any claim resulting from a dangerous condition on the State's property if (1) that condition was not caused by the negligence or wrongful conduct of the employee or (2) MDOT lacked notice and an adequate opportunity to warn or protect against the dangerous condition.
¶ 12. MDOT argues, and the trial court agreed, that Great River was an independent contractor responsible for providing signs, barrels and other materials warning motorists of the construction site. There is no question that Great River was not an employee of MDOT, and this question is not contested by the parties on appeal. Furthermore, as used in the MTCA, the term "employee" "shall not mean a person or other legal entity while acting in the capacity of an independent contractor under contract to the state or a political subdivision[.]" Miss.Code Ann. Section 11-46-1(f) (Rev.2002).
¶ 13. The contract between MDOT and Great River incorporated the "Mississippi *169 Standard Specifications for Road and Bridge Construction" as part of the contract. Section 104.01 specifically provided that "the Contractor shall furnish all labor, materials, equipment, supplies, transportation, supervision, methods and procedures necessary to complete the work in accordance with the plans, specifications and terms of the contract." Regarding warning devices, Section 107.10 provided as follows:
The Contractor shall provide, erect and maintain all necessary barricades, lights, danger signals, signs and other traffic control devices; shall provide qualified flaggers where necessary to direct the traffic; and shall take all necessary precautions for the protection of the work and safety of the public. Highways or parts of the work closed to through traffic shall be protected by effective barricades. Suitable warning signs shall be provided to properly control and direct traffic.
By contract, MDOT would have an inspector authorized to inspect Great River's work and the work site; however, the contract clearly limited the authority of the inspector, to wit: "The inspector will not be authorized to alter or waive the provisions of the contract, issue instructions contrary to the plans and specifications, or act as foreman for the contractor." Mississippi Standard Specifications for Road and Bridge Construction Section 105.10.
¶ 14. Despite this language in the contract, Chisolm's heirs and Pugh dedicate the majority of their brief to discussions of the Manual on Uniform Traffic Control Devices (MUTCD) and MDOT's alleged noncompliance therewith, arguing that they will be entitled to a claim of negligence per se at a trial of this matter because of the "numerous clear violations of the mandatory provisions of the MUTCD set forth infra and § 63-3-305 Miss[.] Code Ann[.] (1972, as amended)." Appellants cite numerous Mississippi cases which discuss the MUTCD; however, appellants have not yet directed this Court to any case indicating that the guidelines of the MUTCD are, indeed, mandatory and not advisory. Additionally, U.S. 61 has been designated as a state highway and is under the jurisdiction of the Mississippi Transportation Commission for construction and maintenance. Mississippi Code Ann. Section 65-3-3 (Rev.2001). As of the date of this opinion, Mississippi has not adopted the MUTCD; thus, we do not agree with appellants' unsubstantiated assertion that in this instance the MUTCD standards are mandatory and not advisory.
¶ 15. Our supreme court has previously held that "the relevant MUTCD provisions may properly be considered by a jury as evidence of negligence, albeit not as conclusive evidence thereof." Jones v. Panola County, 725 So.2d 774, 778 (¶ 14) (Miss. 1998).
¶ 16. The supreme court reviewed this issue in Donaldson v. Covington County, 846 So.2d 219 (Miss.2003). Donaldson was injured as a result of an automobile accident at a curve in a road maintained by Covington County. After a bench trial, the circuit judge entered a judgment for the county, finding that the county exercised ordinary care in performing its duty to warn motorists of the curve. On appeal, Donaldson argued that the MUTCD should be enforced as the minimum standard of care in the placement of signs. The supreme court disagreed, declining to extend its prior rulings which had previously established that while the MUTCD may be considered as evidence of negligence, it is nonconclusive proof of the standard of care. Id. at 223 (¶ 15). Quoting the MUTCD, our high court opined:
The manual states that it "describes the application of control devices, but shall *170 not be the legal requirement for the installation." Manual of Uniform Traffic Control Devices § 1A.09 (Millennium Ed. with Revision No. 1 changes Dec. 28, 2001). The "decision to use a particular device at a particular location should be made on the basis of either an engineering study or the application of engineering judgement." Id. The manual should not be considered a substitute for engineering judgment. Id.

Id. at 224 (¶ 20).
¶ 17. Chisolm and Pugh point this Court to no authority supporting their contention that alleged violations of the MUTCD constitute negligence per se. Furthermore, it is clear that in Mississippi a verdict favoring the plaintiff based solely on the MUTCD guidelines would be improper. Id. at 223 (¶ 15) (citing Jones, 725 So.2d at 778). Chisolm's heirs' and Pugh's assertions that they are entitled to a claim of negligence per se are erroneous: while the MUTCD may be considered as evidence of negligence, it is not conclusive proof of the standard of care. Id. at 223 (¶ 15).
¶ 18. We agree that Great River was hired by MDOT as an independent contractor, and we agree that under the language of the contract Great River bore responsibility for the signage at the construction site; however, under the MTCA, MDOT could still be liable under the narrow exceptions of Sections 11-46-9(1)(p) and (v). The MTCA provides immunity for governmental entities for injuries arising from a plan or design for construction or improvements to public property as follows:
including but not limited to . . . highways, roads, streets, bridges . . . where such plan or design has been approved in advance of the construction or improvement by the legislative body or governing authority of a governmental entity or by some other body or administrative agency, exercising discretion by authority to give such approval, and where such plan or design is in conformity with engineering or design standards in effect at the time of preparation of the plan or design[.]
Miss.Code Ann. Section 11-46-9(1)(p) (Rev.2002). Under the plain language of the MTCA, MDOT could be held liable for injury resulting from a dangerous condition on the property if (1) MDOT had notice of the dangerous condition and (2) MDOT had adequate opportunity to protect or warn against the dangerous condition. Miss.Code Ann. Section 11-46-9(1)(v).
¶ 19. Wes Stafford, an MDOT employee, was the resident engineer for the project site at the time the accident occurred. Stafford testified that MDOT developed the traffic control plan for the project site. Harry Gilliand, who was president of Great River at the time of the construction and accident, testified in his deposition that MDOT provided the minimum signage for the construction site, as well as the traffic control plan. Gilliand indicated that when his company bid for the job, MDOT gave Great River a copy of the traffic control plan. Gilliand further testified that Great River bore the contractual responsibility to ensure that the signs and other markers were installed in conformity with MDOT's traffic control plan.
¶ 20. Stafford testified that the shoulder area surrounding the culvert was approximately two feet at the time of the accident. Stafford further testified that although he could not recall the industry standard for shoulders applicable during 1999, he would estimate that the shoulder should have been approximately six feet. Gilliand took notes of his inspection of the construction site, and his notes taken on April 8, 1999, indicate that the pavement *171 striping by the culvert was cracked and the pavement of the southbound lane of Highway 61 had dropped in elevation. The notes also indicate that no work was performed from March 22, 1999, until April 12, 1999.
¶ 21. George Germain was a technician with MDOT during 1999, and he routinely inspected the construction site, made notations of his observations, and recommended action based upon his observations. Germain requested that Great River add lights and barrels to the construction area; however, Germain's notes from March 1999 to April 7, 1999, do not reflect that the requested barrels and lights were added. Additionally, Stafford testified that the construction site complied with the traffic control plan when he toured the site on April 14, 1999.
¶ 22. The MUTCD, section 6C-7 states "[d]uring hours of darkness a flashing warning light should be placed on drums used singly and steady-burn warning lights should be placed on drums used in a series for traffic channelization." MUTCD 1988 Ed.
¶ 23. After an extensive review of the record before this Court, we find that summary judgment was premature to the extent that MDOT had notice that a dangerous condition existed at the construction site. It is clear that an MDOT representative made frequent visits to the construction site, and it is clear that at least on one occasion, MDOT requested that Great River install additional warning devices. Additionally, Stafford, the MDOT engineer, testified that at the time of the accident, the shoulder surrounding the culvert was only two feet, whereas in his opinion the shoulder should have been at least six feet. Clearly there are sufficient questions of fact regarding MDOT's notice of such hazards and MDOT's ability to rectify or warn against the hazards.
¶ 24. While we agree that there remains a question of fact under section (v), we do not agree that summary judgment was incorrect as far as section (p). Wes Stafford signed an affidavit attesting that the signage and warning devices were in conformity with the MUTCD. Stafford further testified that the plan or design used for the project was "in conformity with accepted engineering or design standards in effect at the time of the preparation of the plan or design."
¶ 25. These assertions contrast with Pugh's interrogatory responses which designated Lieutenant David Beard of the Vicksburg Police Department as an expert witness in the fields of accident reconstruction and causation. Lt. Beard was expected to testify that from his review of the depositions, the accident scene, and the MUTCD, the signage and road markings directing approaching drivers were incorrect and improper.
¶ 26. Although Stafford's deposition and Pugh's interrogatory responses appear to conflict, we do not agree that Beard's projected testimony is sufficient to create a question of fact as to whether the traffic control plan as approved failed to meet the accepted engineering or design standards in effect at the time the plan was prepared; such a showing would be necessary under the plain language of Section 11-46-9(1)(p). Beard's projected testimony does not discuss the traffic control plan, and it certainly does not contradict MDOT's assertion that, at the time it was approved, the plan conformed to accepted engineering standards.
¶ 27. While we agree that there are clearly issues of fact for the jury as far as MDOT's notice of a dangerous condition on the property and MDOT's opportunity to warn or protect against the condition, we find that summary judgment was appropriate *172 regarding the traffic control plan and the unsupported allegations that an unidentified third party altered the signage at the construction site. Accordingly, the judgment of the trial court is affirmed in part and reversed and remanded in part.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF SHARKEY COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE TO BE DIVIDED EQUALLY BETWEEN THE APPELLANTS AND THE APPELLEE.
KING, C.J., BRIDGES, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.
NOTES
[1] After this ruling the Chisolm heirs reached a settlement with Great River.
[2] The order granting summary judgment in the Pugh case is not contained in the record.