SOLTZ MACHINERY & SUPPLY COMPANY *v.* McGEHEE.

4-7635                                    187 S. W. 2d 896

Opinion delivered May 14, 1945.

748

*Buzbee, Harrison & Wright* and *Robert S. Lindsey,* for appellant.

*Rowell, Rowell & Dickey,* for appellee.

SMITH, J. Appellant, Soltz Machinery & Supply Company (hereinafter referred to as "Soltz"), is a partnership composed of William Bilsky, William S. Sherman and others, engaged in the scrap iron business at Pine Bluff, its place of business being on East 3rd street. The Pine Bluff Wrecking Company (hereinafter referred to as "Wrecking Company") is a wrecking and salvage company having a storage and sales lot and office on East 5th street in Pine Bluff. Appellant, Soltz, purchased from the Southern Ice Company certain old equipment which the ice company was disposing of in the process of modernizing its plant.

The purchaser took the property as found on the ice company's premises and then entered into a contractual agreement with the Wrecking Company whereby the Wrecking Company agreed to dismantle and remove specified equipment for $5 a ton. During the performance of that contract by the Wrecking Company, Robert L. McGehee was killed when a partially removed fly wheel fell on him. The Wrecking Company was a partnership, Robert L. McGehee being one of the partners and H. C. Smiley the other. Appellant, The Fidelity & Casualty Company of New York, carried a policy of Workmen's Compensation insurance on Soltz.

The Workmen's Compensation Commission awarded appellee, Robert McGehee's widow, death benefits under the compensation law following a holding by the commission that Robert McGehee was an employee of Soltz and that his average weekly wage was $50.

Appellee, by her attorney, filed her claim for compensation dated March 17, 1944, alleging that Robert L. McGehee was an employee of "Soltz Machinery & Supply Company, or Southern Ice Company, either or both," and that he was injured on February 28, 1944.

Appellant controverted appellee's right to compensation for the reason that McGehee "was not an employee of Soltz Machinery & Supply Company." The Southern Ice Company and its insurance carrier denied that he was an employee of Southern Ice Company.

The commission made an award in favor of the appellee and against appellants, and in favor of the Southern Ice Company. There was no appeal from the action of the commission holding in favor of the Southern Ice Company. Soltz has appealed.

The matter was first heard by one member of the commission, who prepared a "statement of the case," in which testimony was extensively reviewed. Upon the appeal to and hearing by the entire commission, additional testimony was heard, all of which was summarized by the commission in findings of fact reading as follows:

"1. That Robert L. McGehee, deceased, was an employee of the Soltz Machinery & Supply Company at the time of his death.

"2. That Robert L. McGehee, deceased, died as a result of accidental injuries arising out of and in the course of his employment as an employee of the Soltz Machinery & Supply Company on February 28, 1944.

"3. That the deceased average weekly wage was $50."

Upon these findings of fact the commission announced the following conclusions of law.

"Testimony before the commission is in direct conflict as to whether or not William Bilsky gave instructions as to the manner and means of doing the work dismantling and removing the machinery purchased by the Soltz Machinery & Supply Company from the Southern Ice Company. Orris Nix, Robert Lawson, Glen Flukas and John Eason all testified that William Bilsky was on the job quite frequently and did instruct the members of the crew from time to time as to how to do the work and as to what work should be done first. Bilsky admitted that he was on the job quite frequently and denied that he gave instructions testified to by the above members of the crew. He testified that he went on the job for the purpose of telling them when he had a car to be loaded, in order to save demurrage, but it is to be noted that he also testified that only two cars were loaded and shipped from the job. The evidence shows that tools belonging to the Soltz Machinery & Supply Company were used on the job, and that a truck belonging to the Soltz Machinery & Supply Company was also to be used in removing the boiler, the use of which was later refused.

"In determining whether a person is an employee or an independent contractor, one of the most controlling factors is whether the employer had the right to control the manner and means of the work to be accomplished. The evidence before the commission convinces them that William Bilsky did exercise control over the manner and means of dismantling and removing machinery and over the conduct of the employees engaged in the work.

"Upon consideration of all the evidence, therefore, the commission finds that at the time of Robert L. McGehee's death on February 28, 1944, he was an employee of the Soltz Machinery & Supply Company, and that his death resulted from accidental injuries arising out of and in the course of his employment as an employee of the Soltz Machinery & Supply Company.

"The commission also finds from the evidence before them at the time of the accidental death of Robert L. McGehee his average weekly wage was $50."

An award of $17.50 per week was made, which was affirmed on the appeal to the circuit court, and from that judgment is this appeal.

It is insisted that this finding is contrary to the law and evidence, and that the facts found by the commission do not support the award.

It appears, therefore, that the question presented for decision is the one fact, that question being, whether McGehee, at the time he was injured and killed, was an employee of Soltz, or was, as Soltz contends, an independent contractor.

In approaching the decision on this question it must be remembered that it has been consistently and frequently held that the findings of the Workmen's Compensation Commission are, on appeal, given the same verity that attends a jury's verdict, or to facts found by the circuit judge, when a jury has been waived. *Barrentine* v. *Dierks Lbr. & Coal Co.,* 207 Ark. 527, 181 S. W. 2d 485, and cases there cited.

For the reversal of this judgment it is very earnestly insisted that McGehee was an independent contractor, and not an employee, and that, therefore, the case is not a compensable one. The principal basis for this contention is that McGehee was employed under a contract for dismantling and removing the equipment for the definite price of $5 per ton, and that he employed labor of his own choice, for wages which were fixed and paid by himself, and that McGehee had control of this labor, as well as that of himself.

The commission summarized the testimony of employees engaged in the work with McGehee, and made the finding that Bilsky supervised the work, although he was not on the job every day, and that he gave orders, not only to them, but to McGehee also, as to the manner in which the work should be done, and we think the testimony legally sufficient to support the finding, although it may be contrary to the preponderance of the evidence. This being true, McGehee was an employee within the meaning of the Workmen's Compensation Act. Although he had a contract which considered by itself alone, would have constituted him an independent contractor.

At § 1076, Schneider's Workmen's Compensation Text, vol. 4, Permanent Ed., p. 51, it is said:

"While in all ordinary transactions the existence of the relation of contractor as between two given persons excludes that of principal and agent, or master and servant, there is not necessarily such a repugnance between them that they cannot exist together, and an employee may be an independent contractor as to certain work, and yet be a mere servant as to other work for the same employer." The decisions recognize this principle.

"The employer, however, is responsible in damages only if the worker was injured while performing that portion of the work in which he was an employee. Indeed, there are fact situations where the worker may co-exist as an independent contractor and an employee within the compensation acts in his work for the employer, benefits being given or denied, according to the relationship of the worker at the time of the injury."

A statement to the same effect is found in § 13, Chap. Independent Contractors, 14 R. C. L., p. 76, and at § 20, Chap. Independent Contractors, 27 Am. Jur., p. 500. Numerous cases are cited in the notes to these texts which fully sustain them. We conclude, therefore, that an award was properly made.

It is insisted, however, that the award is excessive, inasmuch as it is based upon the earnings of McGehee

as a member of the partnership employed in the work, and not upon his wages. Apparently, he was not paid wages, but shared in the earnings of his partnership, which his surviving partner testified ran from $50 to $60 per week.

The case of *Hanfield Pet. Co.* v. *Allen*, 157 Okla. 114, 11 Pac. 2d 175, is cited to support this contention. The headnotes to that case read as follows:

"Profits derived from business enterprise conducted by workmen should not be considered in determining workman's average weekly wages for year preceding injury. (Comp. St. 1921, § 7289, Subd. 4.)

"A workman who is employed under separate concurrent contracts is entitled to compensation based upon his entire wages under such contracts upon receiving an injury while in the performance of his duties under one of the contracts. But profits derived from a business enterprise conducted by the workman during the time of his employment are not to be considered in determining the amount of his average weekly wages for the twelve-month period immediately preceding the injury."

This was an Oklahoma case, based, of course, upon the statutes of that state, and in the body of the opinion it is said:

"By § 7289, C. O. S. 1921, it is provided that, except where it is otherwise provided in the act, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis on which to compute compensation. Subdivision 4 of said section provides: 'The average weekly wages of an employee shall be one fifty-second part of his average annual earnings.' "

Section 12 of our own Compensation Act (Act 319 of the Acts of 1939, p. 790), reads as follows: "Except as otherwise specifically provided, the basis for compensation under this act shall be the average weekly wages earned by the employee at the time of the injury, such wages to be determined from the earnings of the injured employee in the employment in which he was

working at the time of the injury during the period of 52 weeks immediately preceding the date of the injury divided by 52: . . ."

Here McGehee, who was found to be an employee when injured, was earning "in the employment in which he was working at the time of the injury" not less than $50 per week.

In the Oklahoma case, the employee had a contract to pump certain oil wells, for which he was paid by the employer against whom he filed a claim. This contract did not require all his time, and he had another and separate contract with the Magnolia Petroleum Company to operate a filling station, and he sought to include the profits from that business as a part of the wages being earned at the time of his injury, but the Supreme Court of Oklahoma reversed the award including this claim based on his employment by the Magnolia Petroleum Company.

Here, there is no showing or contention that any part of the $50 to $60 per week earned by McGehee was earned otherwise than by a service to a partnership of which he was a member, and to whose earnings his own labor contributed.

Here the deceased had no children, and his wife was his only dependent. The compensation to which the wife was entitled is provided in § 15 of our Compensation Act, par. 1 of sub-sec. c, reading as follows: "To the widow if there is no child, thirty-five (35) per centum, and such compensation shall be paid until her death or re-marriage." The commission found that the deceased was earning not less than $50 per week at the time of his injury, and awarded compensation of $17.50 per week, which is thirty-five per centum of the earnings of the deceased. Common labor on the job was paid $20 per week, and the wages of one Baird were raised to $30 per week when Baird had learned to use a blow torch, but deceased was earning not less than $50 per week as shown by the testimony and as found by the commission. We cannot say, therefore, that the award to the widow was excessive.

Inasmuch as the award of the commission is supported by substantial testimony, legally sufficient to sustain it, the judgment must be affirmed, and it is so ordered.