**Otis L. CORBAN, Appellant,**

v.

**SKELLY OIL COMPANY, Appellee.**

**No. 16984.**

United States Court of Appeals
Fifth Circuit.

June 26, 1958.

Robert M. Lowe, Texarkana, Ark., Ross R. Barnett, Jackson, Miss., P. Z. Jones, Barnett, Jones & Montgomery, Jackson, Miss., William F. Riley, Natchez, Miss., for appellant.

Gayle M. Pickens, Tulsa, Okl., P. H. Eager, Jr., Jackson, Miss., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

In a personal injury action based on negligence and removed to the United States District Court by reason of diversity of citizenship, a summary judgment was entered in favor of the defendant, Skelly Oil Company. The plaintiff, Otis L. Corban, has appealed.

Skelly Oil Company, which we will abbreviate as Skelly, had producing oil wells in a field in Arkansas near Texarkana. The pump in one of these wells stopped working. Skelly's employee, George Hoover, described as a pumper of the particular well, notified his superior, Arthur L. Thomas, that the pump was not operating. Thomas contacted J. B. Downs, Inc., which we will refer to as Downs, and requested it to get the well in operation again. Downs and its employees were specialists in the servicing and repair of well equipment. On March 18, 1954, Downs sent well pulling and other equipment to the well. Included were long handled Stillson wrenches. In the Downs crew were R. B. Germany, the crew foreman, Otis L. Corban, the appellant, Talmage Moore, Billy March and M. J. Short. The pump was about 4,000 feet below the surface and near the bottom of the well. It operated inside the tubing of the well. The tubing consisted of lengths of pipe coupled together extending from a short distance above the surface to the bottom of the well. The pump was operated by a string of rods, called sucker rods, running inside the tube from the plunger of the pump to a walking beam connected with the engine at the surface. The sucker rods were about 25 feet in length and threaded on each end. They were connected by the threaded ends being screwed into coupling boxes.

In order to repair the pump it was necessary to bring it to the surface. To do this the tubing was drawn up and dismantled. It was also necessary to dismantle the sucker rod into its component parts as the tubing was withdrawn. This operation is known as a stripping job. In stripping it is necessary to back-off the sucker rod. In so doing a counterclockwise torque is applied on the rod at the surface until one of the connecting joints loosens and becomes unscrewed. The portion of the rod above this joint

or coupling is then brought to the surface. As the tubing is pulled up and dismantled the sucker rod is again brought to the surface and the backing-off process is repeated until the pump is eventually surfaced. One of the methods of backing-off the sucker rod is by using a stripper-wheel, some times called a back-off wheel. This device is a circular appliance having a hub in the center which is to be attached to the sucker rod. Spokes radiate from this hub to a circular rim. The turning of this wheel creates the torque used in the stripping job. Another method of performing this operation is by affixing Stillson wrenches to the sucker rods and creating the torque by turning the rod with the wrenches. Still another method is the use of chain tongs. The J. B. Downs Corporation owned several back-off wheels but did not bring one to this job.

J. B. Downs, the head of the company bearing his name, testified that his foremen were instructed, where a stripping job seemed necessary, to discuss the matter with the company representative if one was at the job site and, within the bounds of reason, to follow the suggestions of the company representative.

Hoover, the appellee's pumper, was its only employee at the well. The appellant testified on deposition that when it was ascertained that a stripping job was to be done, Germany, the foreman of the Downs crew, went to Hoover and asked him what he wanted done. He quoted Hoover as telling Germany to use the thirty-six inch Stillson wrenches. As Talmage Moore related the conversation, Germany told Hoover that he had used thirty-six inch Stillson wrenches before to break pumps loose and would use the Stillson then if it was alright, and Hoover told Germany to go ahead and try it. Hoover stated that he had no discussion with any of the Downs crew about the work or how it was to be done. Germany died before the case was decided. The directions to Corban and the others of the Downs crew were given by Downs' foreman, Germany. It is not contended that Hoover gave any orders or suggestions directly to Corban. Two thirty-six inch Stillson wrenches were affixed to the rod. One of these was placed above and the other below a joint or coupling. With two men working on each wrench the rod was twisted in a counterclockwise direction. The coupling between the two wrenches loosened and the joint became unscrewed. This released the upper wrench and the entire force of the torque was shifted to the lower wrench. The lower wrench spun out of control and struck Corban who was one of those manning the lower wrench. He was injured and sought damages from Skelly, asserting that the use of the Stillson wrenches was negligence for which Skelly was responsible because Skelly's pumper ordered that they be used, and that whether or not such order was given, Skelly had the right to control and owed to Corban the non-delegable duty to see that the work was done with reasonable care. Skelly asserted that its pumper, Hoover, had no authority to direct the work and did not, in fact, attempt to direct it. Skelly denied that it owed Corban any duty to see that the work was done with reasonable care and alleged that Corban's own negligence caused the injury. The district court granted Skelly's motion for a summary judgment and set forth its reasons for so doing in a letter opinion.[1]

1. "I have considered the record and your briefs upon the motion for summary judgment filed by Skelly Oil Company in the above styled matter and am of the opinion that the motion for summary judgment is well taken and should be sustained. The Plaintiff cannot prevail upon any theory of his case. It is my judgment, however, that J. B. Downs, Inc. was an independent contractor and that Plaintiff's only remedy is under the Workmen's Compensation Law. If he became a temporary employee of the Skelly Oil Company, then his remedy would be under the Workmen's Compensation Act and his claim under that Act would be against the Skelly Oil Company's carrier. Under his testimony he consented to employment by the Skelly Oil Company if such employment exist-

██ The Arkansas Workmen's Compensation Law contains a provision which provides for "statutory employers".[2] The provision is valid. Brothers v. Dierks Lumber Co., 217 Ark. 632, 232 S.W.2d 646. By another provision of the Arkansas statute third party tort liability is preserved.[3] One who contracts for the services of an independent contractor has, we think, the same liabilities and immunities as does a prime contractor under the statute, and the independent contractor is in the same position as a subcontractor. 58 Am.Jur. 614, Workmen's Compensation § 57. If the principal, Skelly, was in legal effect the employer of Corban, his remedy under the Workmen's Compensation Act was exclusive, but if Skelly was not an employer, either actual or statutory, and Corban was not an employee, Skelly was a third party under the Arkansas statute and subject to a common law tort action for negligence. Anderson v. Sanderson & Porter, 8 Cir., 1945, 146 F.2d 58; Carroll v. Lanza, D.C.W.D.Ark.1953, 116 F.Supp. 491, Lanza v. Carroll, 8 Cir., 1954, 216 F.2d 808, Carroll v. Lanza, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183; Baldwin Company v. Maner, 1954, 224 Ark. 348, 273 S.W.2d 28. Since Downs carried workmen's compensation insurance, Skelly was not a statutory employer.

██ It is the general rule that a prime contractor is not the employer of those hired by an independent subcontractor. Baldwin Company v. Maner, supra. And of course those hired by an independent contractor are generally not the employees of the principal. In order for Corban to recover he must show negligence of Skelly in directing the manner of performing the work or negligence in failing properly to exercise a duty to control and direct the work. If there was no control exercised and no duty to control, an essential ingredient of Corban's right of action is missing. But, says Skelly, if there was any such control exercised or right of control present Corban was or became the actual, as distinguished from the statutory, employee of Skelly and limited in his recovery to a workmen's compensation award. The Supreme Court of Arkansas in stating the test in determining whether the relationship is one of employment or of independent contractor has quoted from 27 Am.Jur. 486, Independent Contractors, § 6, the following:

"The most important test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. Whether one is an independent contractor depends upon the extent to which he is, in fact, independent in performing the work. Broadly stated, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor." Parker Stave Co. v. Hines, 209 Ark. 438, 190 S.W.2d 620, 622.

This rule is well settled in Arkansas. St. Louis-San Francisco R. Co. v. Conly, 160 Ark. 592, 255 S.W. 308; Mississippi

---

ed. And lastly, if he was an employee of the Skelly Oil Company, then under the Arkansas law his contributory negligence, as a matter of law under his testimony, would bar his recovery.

"The contention that it was a casual employment and therefore in an exclusionary provision cannot be upheld because the Skelly Oil Company was engaged in the course of its business. I am of the opinion, therefore, that the motion for summary judgment should be sustained and an order may be drawn in accord herewith."

2. "Where a subcontractor fails to secure compensation required by this Act, the prime contractor shall be liable for compensation to the employees of the subcontractor * * *." Ark.Stats. § 81–1306.

3. "The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make claim or maintain an action in tort against any third party for such injury * * *." Ark. Stats. § 81–1340.

River Fuel Corp. v. Morris, 183 Ark. 207, 35 S.W.2d 607; Hobbs-Western Co. v. Carmical, 192 Ark. 59, 91 S.W.2d 605; C. M. Farmer Stave & Heading Co. v. Wharton, 193 Ark. 708, 102 S.W.2d 79; Humphries v. Kendall, 195 Ark. 45, 111 S.W.2d 492; Chicago Mill & Lumber Co. v. Phillips, 197 Ark. 131, 120 S.W.2d 131; Rice v. Sheppard, 205 Ark. 193, 168 S.W.2d 198; Crossett Lumber Co. v. McCain, 205 Ark. 631, 170 S.W.2d 64. This doctrine is applicable where the individual whose status is in question has been hired by a contractor or by an agreement with the person for whom the work is to be done. Crossett Lumber Co. v. McCain, supra.

■ This Court has recognized and applied the doctrine,

" * * * that generally the existence of the relation of independent contractor and employer excludes the relation between the parties of principal and agent or master and servant. Nevertheless, there is not necessarily such repugnance between them that both relationships could not exist at the same time in connection with different phases of the work. An employee might be an independent contractor as to certain work and a mere servant as to other work not embraced within the independent contract." Helms v. Sinclair Refining Co, 5 Cir., 1948, 170 F.2d 289, 291. See 27 Am.Jur. 500, Independent Contractors, § 20.

Such is the rule in Arkansas. See Soltz Machinery & Supply Co. v. McGehee, 208 Ark. 747, 187 S.W.2d 896; Parker Stave Co. v. Hines, supra; where it is held that it is the relationship at the time of the injury that determines the rights of the worker. We agree with the district court that if Corban was subject to the control of Skelly in the performance of the stripping job he became its employee and his right to recover was limited to workmen's compensation. Cf. Fontenot v. Stanolind Oil & Gas Co., D.C.W.D.La.1956, 144 F.Supp. 818, affirmed 5 Cir., 1957, 243 F.2d 574.

■ The employer of an independent contractor is under a duty to exercise reasonable care to maintain its premises and equipment to be furnished by it in safe condition for use and is liable for injuries to an employee of the independent contractor resulting from its failure to do so. Sunray Oil Corporation v. Allbritton, 5 Cir., 1951, 187 F.2d 475, 188 F.2d 751, certiorari denied 342 U.S. 828, 72 S.Ct. 51, 96 L.Ed. 626. No contention is made by Corban that the premises were unsafe or that Skelly furnished or was required to furnish any of the tools or equipment for doing the work.

■ On behalf of Corban it is urged that the work being done at the time of his injury was inherently dangerous regardless of the equipment used, and that, in such cases, the principal owes a non-delegable duty to see that the work is performed with the appropriate degree of care. It has been stated that "An employer is liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous. The theory upon which the liability is based is that a person who engages a contractor to do work of an inherently dangerous character remains subject to an absolute, non-delegable duty to see that it is performed with that degree of care which is appropriate to the circumstances, or, in other words, that all reasonable precautions shall be taken during its performance, to the end that third persons may be effectually protected against injury". 27 Am.Jur. 517, Independent Contractors, § 39. Thus it appears that the rule is designed to protect third persons. As we have shown Corban was not in this class. We have seen no case where the inherently dangerous doctrine has been extended so as to permit an employee of an independent contractor to recover from the principal for a breach of the non-delegable duty. We find it unnecessary to decide whether a so-called stripping job is inherently dangerous. But if it be such then Corban became, for the purpose of such work, the em-

ployee of Skelly. Hammond Ranch Corporation v. Dodson, 199 Ark. 846, 136 S.W.2d 484. As an employee of Skelly he would be limited to his workmen's compensation benefits.

Since we are in accord with the district court's view that Skelly had no liability to Corban arising out of negligence, we do not reach the question of contributory negligence.

The judgment of the district court is Affirmed.