317 So.2d 410 (1975)
John R. SPRUILL
v.
YAZOO VALLEY OIL MILL, INC.
No. 48205.
Supreme Court of Mississippi.
August 11, 1975.
As Amended on Denial of Rehearing October 13, 1975.
Liston & Upshaw, Winona, Fraiser & Burgoon, Greenwood, for appellant.
Satterfield, Shell, Williams & Buford, Michael S. Allred, Cary E. Bufkin, Jackson, Whittington & Brock, Greenwood, for appellee.
Before RODGERS, ROBERTSON and BROOM, JJ.
ROBERTSON, Justice:
John R. Spruill, individually and on behalf of the other heirs of Bobby Ray *411 Spruill, deceased, appeals from the order of the Circuit Court of Leflore County, Mississippi, sustaining a general demurrer to the third amended declaration of the plaintiff.
Spruill brought suit against Yazoo Valley Oil Mill, Inc., for damages because of the death of his son, Bobby Ray Spruill, who died of injuries received when, as an employee of Greenwood Utilities, he was attempting to restore electrical current to the plant of Yazoo. Yazoo was engaged in the business of processing soybeans into oil and other related products for sale to the general public. It purchased electricity from Greenwood Utilities, which was owned and operated by the City of Greenwood.
In order to furnish electricity to Yazoo, Greenwood Utilities installed three 100 KVA overhead distribution transformers in a delta bank on the property of Yazoo about July 29, 1964. About September 1, 1967, Yazoo purchased from Greenwood Utilities all electrical facilities located on Yazoo's premises "which theretofore had been utilized by Greenwood Utilities to serve the Defendant's plant with electrical current, including the transformers hereinabove mentioned."
Contemporaneously with this purchase, Yazoo and Greenwood Utilities entered into an "Agreement for Electric Service" under the terms of which Yazoo as "Customer" requested and Greenwood as "Utilities" agreed to serve Customer's needs for electricity to its Greenwood plant. Paragraphs 4, 5 and 12 of the agreement provide:
"FOURTH: As a condition for receiving service, Customer hereby conveys to the Utilities all rights-of-way and tree-trimming rights required for the installation of materials and equipment required for rendering service to the Customer hereunder, and shall allow the Utilities free access and entry to the Customer's property and premises for the purpose of reading meters, making inspection of and repairs to Utilities' property, of whatever kind, and for testing the amount and character of electric energy use.
"FIFTH: All transmission lines, distribution lines, switches, equipment, materials and machinery up to the said division point, and all billing metering equipment, wherever placed, shall be owned and maintained by the Utilities, and shall at all times be subject to its inspection, repair, maintenance, replacement, alteration or removal at the option of the Utilities. All electric lines and electric facilities of whatever kind and character which are located beyond the said division point shall be owned, operated and maintained by the Customer.
......
"TWELFTH: When the Customer requests the Utilities to perform any work on facilities owned and operated by the Customer, or the installation of new facilities which will be owned and operated by the Customer, the Customer will reimburse the Utilities the actual cost of labor and materials used and furnished by Utilities in performing said work plus 25% for overhead and plus a reasonable charge for the use of all power operated equipment used in the performance of said work. If requested by Customer, Utilities shall, before performing said work, set the reasonable charge for use of such power operated equipment for performing that particular job."
In the second amended declaration, which was made a part of the third amended declaration, Plaintiff alleged that prior to September 8, 1969, Yazoo contracted with Bowman and Bowman, electrical engineers of Greenwood, Mississippi, to test the three transformers for moisture content. Yazoo requested Greenwood Utilities to take samples of the insulating oil from the three transformers and deliver these samples to Bowman and Bowman for testing. One of the transformers was found *412 to be in need of repairs and Yazoo requested Greenwood Utilities to disconnect this transformer and deliver it to Bowman and Bowman for necessary repairs, and then when it had been repaired to reinstall the transformer in its original location.
Plaintiff further alleged that Bowman and Bowman, an independent contractor, set the tap setting on the repaired transformer at 14,400 volts while the tap settings on the other two transformers remained at 13,200 volts; that Greenwood Utilities reinstalled the repaired transformer in its original location on Yazoo's premises. Although alleging that the higher tap setting was a latent and hidden defect which would probably result in the overheating of the insulating oil surrounding the core and coil of the transformer, plaintiff charged that Yazoo "accepted the completed work product of its independent contractors, Bowman & Bowman and Greenwood Utilities" and negligently permitted the "bank of transformers to operate on uneven tap settings and negligently failed to conduct an inspection itself as to the tap settings."
On November 22, 1970, about 3 o'clock p.m., Yazoo experienced a power failure or outage to a portion of its plant. Plaintiff alleged that Yazoo requested "the assistance of Greenwood Utilities in restoring power to that portion of the Defendant's plant which had suffered the power outage." Greenwood Utilities dispatched Bobby Ray Spruill and Dewey Watson, linemen employed by it, to Yazoo to do the necessary to restore power.
Plaintiff further alleged:
"Upon arrival at the Defendant's premises, Plaintiff's decedent and Watson discovered that the main disconnect switch on the metering pole adjacent to the property of the Defendant had blown and that the fused disconnect switches located approximately thirty (30) feet above the ground and directly over the aforesaid bank of three transformers had blown. Thereupon, Plaintiff's decedent and Watson, following standard operating procedures of Greenwood Utilities, made an examination of said bank of transformers by visually inspecting them and by touching them to determine if the tanks thereof were hot, and as a result of said examination, found that no oil had up to that time escaped from the transformer tanks and that the transformer tanks were not overheated. After said examination, Plaintiff's decedent and Watson re-fused the main switch on the metering pole and then proceeded to a point underneath the said bank of three transformers for the purpose of re-fusing the said disconnect switches located directly over said bank of transformers. Plaintiff's decedent, utilizing a lift bucket, removed the blown fuses from said disconnect switches and was in the process of replacing blown fuses with new fuses. While Plaintiff's decedent was in the process of re-fusing said disconnect switches, the cover or lid on the second transformer in said bank of transformers was blown off the top of said transformer by exploding gases and oils inside of said transformer, which burning oil was sprayed over Plaintiff's decedent's entire body, thereby inflicting extremely painful injuries to Plaintiff's decedent from which injuries he subsequently died." (Emphasis added).
Plaintiff Spruill charged that the negligence of defendant Yazoo consisted of:
"(a) Failing to furnish Plaintiff's decedent with a reasonably safe place to conduct his business and work upon the premises of the Defendant;
"(b) Failing to inspect the tap settings on said bank of transformers from the time of the re-installation of one of said transformers to November 22, 1970, so as to discover the hidden and latent dangerous condition created by the continual operation of said bank of transformers on incorrect tap settings;

*413 "(c) Failing to discover the dangerous, latent, and hidden condition created by the continual operation of said bank of transformers from September, 1969, up to November 20, 1970, and to warn Plaintiff's decedent of such condition."
The demurrer to the first amended declaration was sustained by Circuit Judge B.B. Wilkes. The demurrers to the second and third amended declarations were sustained by Circuit Judge Arthur B. Clark.
Yazoo, engaged in processing soybeans and other agricultural products, depended on Greenwood Utilities, engaged solely in the business of selling and delivering electricity to its customers, for its source of energy.
Yazoo was willing to and did pay these independent contractors for services rendered in their chosen field. When Yazoo experienced a power failure on November 22, 1970, it called on Greenwood Utilities, its electrical expert, to do the necessary to restore electricity to its plant. All Yazoo knew was that for some reason it was not getting electricity; it did not know what was wrong. All Yazoo wanted Greenwood Utilities to do was investigate, find out what was wrong and remedy it, and to restore the flow of electricity.
In Jackson-Ready Mix Concrete v. Sexton, 235 So.2d 267 (Miss. 1970), this Court quoted with approval from 41 Am.Jur.2d, Independent Contractors, section 28 (1968):
"`As an exception to the general rule requiring the owner or occupier of premises (the contractee) to furnish a safe place of work to an independent contractor and the latter's employees, the owner or occupier is under no duty to protect them against risks arising from or intimately connected with defects of the premises, or of machinery or appliances located thereon, which the contractor has undertaken to repair. Closely related to this exception is the rule that the owner is not liable for death or injury of an independent contractor or one of his employees resulting from dangers which the contractor, as an expert, has known, or as to which he and his employees "assumed the risk."'" 235 So.2d at 271. (Emphasis added).
In Corban v. Skelly Oil Company, 256 F.2d 775 (5th Cir.1958), the Circuit Court of Appeals said:
"It has been stated that `An employer is liable for injuries caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous. The theory upon which the liability is based is that a person who engages a contractor to do work of an inherently dangerous character remains subject to an absolute, non-delegable duty to see that it is performed with that degree of care which is appropriate to the circumstances, or, in other words, that all reasonable precautions shall be taken during its performance, to the end that third persons may be effectually protected against injury'. 27 Am.Jur. 517, Independent Contractors, § 39. Thus it appears that the rule is designed to protect third persons. As we have shown Corban [plaintiff] was not in this class. We have seen no case where the inherently dangerous doctrine has been extended so as to permit an employee of an independent contractor to recover from the principal for a breach of the nondelegable duty." 256 F.2d at 780.
(Emphasis added).
The circuit court was correct in sustaining the general demurrer to the third *414 amended declaration, and the judgment of the lower court is affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, INZER, SMITH, SUGG and WALKER, JJ., concur.