# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CT-02526-SCT

*OLIVER DAVID CHISOLM, JR., OLIVER DAVID CHISOLM, III, CAROLYN ELIZABETH CHISOLM AND KAYLA LOUISA CHISOLM*

*v.*

*MISSISSIPPI DEPARTMENT OF TRANSPORTATION*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/2002 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | SHARKEY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID M. SESSUMS |
| ATTORNEY FOR APPELLEE: | G. KENNER ELLIS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENT OF THE CIRCUIT COURT OF SHARKEY COUNTY IS REINSTATED AND AFFIRMED - 11/09/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### CONSOLIDATED WITH

## NO. 2004-CT-00440-SCT

*LINDA PUGH*

*v.*

*MISSISSIPPI DEPARTMENT OF TRANSPORTATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/08/2003 |
| TRIAL JUDGE: | HON. ISADORE PATRICK, JR. |

COURT FROM WHICH APPEALED:    SHARKEY COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    DAVID M. SESSUMS
ATTORNEY FOR APPELLEE:    G. KENNER ELLIS
NATURE OF THE CASE:    CIVIL - PERSONAL INJURY
DISPOSITION:    THE JUDGMENT OF THE COURT OF
APPEALS IS REVERSED, AND THE
JUDGMENT OF THE CIRCUIT COURT OF
SHARKEY COUNTY IS REINSTATED AND
AFFIRMED - 11/09/2006
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.　　In these consolidated suits, the trial courts granted summary judgment to the Mississippi Department of Transportation ("MDOT"), finding that it could not be held liable for the negligence of its independent contractor, Great River Stone Company ("Great River"), and also that it qualified for immunity under the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9(1) (Rev. 2002) ("MTCA"). The plaintiffs appealed, and we referred the matter to the Court of Appeals, which held that Great River was MDOT's independent contractor and that MDOT was indeed immune from liability under two of the MTCA subsections relied upon by the trial courts. However, because it also found MDOT did not qualify for immunity under a third provision, the Court of Appeals reversed and remanded the case for trial. The dispositive question in this case is whether the plaintiffs can overcome the independent contractor relationship between Great River and MDOT in order to hold MDOT liable for their injuries.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.     We begin by borrowing the excellent statement of facts set forth by the Court of Appeals:

> The night of April 11, 1999, Priscilla Chisolm drove down Highway 61 South in Sharkey County, Mississippi, accompanied by Linda Pugh. At that time, Great River Stone Company (Great River) was under contract with the Mississippi Department of Transportation to replace a bridge with an underground box culvert. According to Pugh, as the women approached the construction area, Pugh heard a 'bump' and then heard Chisolm scream, 'I've got it.' The right front wheel of the vehicle left the shoulder of the roadway and, as Chisolm attempted to correct the vehicle, the vehicle began a counterclockwise spin. The vehicle flipped, ejecting Chisolm from the driver's seat. Pugh, who was not thrown from the vehicle, testified that she heard Chisolm screaming for help in the darkness. Chisolm did not survive long after the accident and, while Pugh survived, she suffered severe, permanent disabling injuries.
>
> The day after the accident, members of the Pugh family visited the accident scene and found a twelve to eighteen inch bolt lying next to the road. The bolt matched an indentation in the road indicating that the bolt lay partially on the road. According to Pugh, the bolt was found in the area where she recalled hearing the bump, prior to the vehicle spinning out of control.
>
> In October of 1999, Chisolm's heirs filed suit against MDOT and Great River. That month Pugh also filed suit against MDOT and Great River. Both suits alleged that MDOT and Great River were negligent in placing traffic control barrels, failing to provide warning lights, warning signs, barricades, and guardrails, and numerous other allegations of negligence. . . . On December 18, 2000, MDOT moved for summary judgment in the Chisolm case, to which the Chisolm heirs filed a timely response. On March 28, 2002, the trial court granted MDOT's motion, finding that Great River was an independent contractor and that MDOT was entitled to sovereign immunity under Mississippi Code Annotated Section 11-46-9(p)(v) and (w) (Rev. 2002). It is from this ruling that Chisolm's heirs now appeal.
>
> On February 20, 2002, MDOT moved [for] summary judgment against Pugh[, which the trial court granted]. . . . On May 19, 2003, the trial court granted Pugh permission to seek an interlocutory appeal; however, the Supreme Court denied the petition on February 25, 2004. Pugh filed a motion for judgment under Rule 54 of the Mississippi Rules of Civil Procedure, and the trial court granted the motion on February 26, 2004. Pugh appeals to this Court, and the Pugh case and Chisolm case have now been consolidated.

*Chisolm v. Miss. Dep't of Transp.*, No. 2003-CA-02526 - COA, 2005 Miss. App. LEXIS 560, at *1-4 (Miss. Ct. App. Aug. 16, 2005).

¶3.    Pugh and Chisolm's heirs ("Plaintiffs") urged the Court of Appeals to hold that the trial courts erred in finding Great River to be an independent contractor, and in finding that MDOT was immune under the MTCA. *Id.* at *4. In addressing these issues, the Court of Appeals considered the following three provisions of the MTCA:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> * * *
>
> (p) Arising out of a plan or design for construction or improvements to public property, including but not limited to, . . . highways, roads, streets, [or] bridges . . . where such plan or design has been approved in advance of the construction or improvement by the legislative body or governing authority of a governmental entity or by some other body or administrative agency, exercising discretion by authority to give such approval, and where such plan or design is in conformity with engineering or design standards in effect at the time of preparation of the plan or design;
>
> * * *
>
> (v) Arising out of an injury caused by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of which the governmental entity did not have notice, either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care; [or]
>
> (w) Arising out of the absence, condition, malfunction or removal by third parties of any sign, signal, warning device, illumination device, guardrail or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice[.]

Miss. Code Ann. § 11-46-9(1)(p), (v), (w).

¶4.    The Court of Appeals affirmed summary judgment as to subsection (p) based on Great River's independent contractor status. *Chisolm*, 2005 Miss. App. LEXIS 560, at *13. The

4

court also affirmed summary judgment as to subsection (w) because the traffic control plan met accepted engineering and design standards. *Id.* at *18. It finally found summary judgment to be premature as to subsection (v) because a genuine issue of material fact existed as to MDOT's notice of the dangerous condition at the construction site and its opportunity to warn or protect against the condition. *Id.* at *16-17.

¶5.     We granted certiorari to resolve the issue of whether the plaintiffs can overcome the independent contractor relationship between Great River and MDOT in order to hold MDOT liable for their injuries.

## DISCUSSION

¶6.     Mississippi Rule of Civil Procedure 56 governs motions for summary judgment. This Court reviews de novo a trial court's grant of a motion for summary judgment. *Webb v. Braswell*, 930 So. 2d 387, 395 (Miss. 2006). In conducting our review, we examine all evidentiary matters, including admissions in pleadings, answers to interrogatories, depositions, and affidavits. *McCullough v. Cook*, 679 So. 2d 627, 630 (Miss. 1996). This evidence must be viewed in the light most favorable to the non-moving party. *Hataway v. Estate of Nicholls*, 893 So. 2d 1054, 1057 (Miss. 2005). The movant carries the burden of demonstrating that no genuine issue of material fact exists. *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000). If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in the movant's favor. *Monsanto Co. v. Hall*, 912 So. 2d 134, 136 (Miss. 2005).

**I. Whether the plaintiffs may hold MDOT liable for the negligence of its independent contractor, Great River.**

*Independent contractor status*

¶7. In ***Richardson v. APAC-Mississippi, Inc.***, 631 So. 2d 143, 148 (Miss. 1994), this Court set forth the following definition of an independent contractor: "An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." Under the general rule, the independent contractor's principal has no vicarious liability for the torts committed by the independent contractor or its employees in the performance of the contract. ***Heirs & Wrongful Death Beneficiaries of Branning ex rel. Tucker v. Hinds Cmty. Coll. Dist.***, 743 So. 2d 311, 318 (Miss. 1999) ("***Tucker***").

¶8. Several of the sections of the contract between MDOT and Great River, described below in relevant part, evidence the parties' intent for Great River to serve as an independent contractor:

**Section 104.01 – Intent of Contract**

The Contractor shall furnish all labor, materials, equipment, supplies, transportation, supervision, methods and procedures necessary to complete the work in accordance with the plans, specifications and terms of the contract.

**Section 104.04 – Maintenance of Traffic**

The Contractor shall keep the portion of the project being used by public traffic in satisfactory condition for traffic to be adequately accommodated.

The Contractor shall be bound to the provisions of this subsection and other applicable provisions of the contract with regard to the safe and convenient passage of traffic.

6

**Section 105.10 – Duties of the Inspector**

Inspectors employed by the Department will be authorized to inspect all work and materials. The inspection may extend to all parts of the work and to the preparation, fabrication or manufacture of the materials. The inspector will not be authorized to alter or waive the provisions of the contract, to issue instructions contrary to the plans and specifications, or to act as foreman for the contractor.

**Section 107.10 – Barricades, Warning Signs & Flaggers**

The Contractor shall provide, erect and maintain all necessary barricades, lights, danger signals, signs and other traffic control devices . . . and shall take all necessary precautions for the protection of the work and safety of the public. . . . Suitable warning signs shall be provided to properly control and direct traffic. . . . Such warning signs shall be constructed and erected in accordance with the provisions of this contract.

**Section 107.17 – Contractor's Responsibility for Work**

Until release of maintenance in accordance with 105.16, the Contractor shall have the charge and care thereof and shall take every precaution against injury or damage by action of the elements or from any other cause, whether arising from the execution or nonexecution of the work.

**Section 618.01.2 – Traffic Control Plan**

This work also consists of complying with the contract requirements of the Department's Traffic Control Plan. The purpose of the Traffic Control Plan is to maintain through and local traffic safely through construction zones.

¶9. While the construction work had to comply with MDOT's specifications and the Traffic Control Plan, Great River maintained control over the performance of all aspects of the work. Additionally, MDOT inspectors had no power to alter Great River's performance, so long as the requirements of the contract were observed. Based on the clear language of the contract, we agree with the trial courts and the Court of Appeals that Great River was an independent contractor. *Chisolm*, 2005 Miss. App. LEXIS 560, at *9. *See also Tucker*, 743 So 2d at 318

7

(county college not liable where airport management company found to be an independent contractor); **Rolison v. City of Meridian**, 691 So. 2d 440, 445 (Miss. 1997) (city not liable where umpires' association found to be an independent contractor).

¶10.    Even if a contract clearly evinces the parties' settled intent to create a principal-independent contractor relationship, when a third party is adversely affected, this Court can look beyond the contract to determine whether public policy requires recharacterization of the relationship to allow the injured party to recover.   This factor was set forth by the Court in **Richardson**, but we noted an important caveat to its application:

> A necessary condition precedent for the application of this factor, however, is that the party challenging the claimed relationship will be adversely affected, and denied an adequate legal remedy.   In the absence of this, the right of parties to contract as they please is a constitutionally-protected right.

**Richardson**, 631 So. 2d at 150 (citing U.S. Const. art. I, § 10; Miss. Const. art. 3, § 16).

¶11.    Application of the "public policy" factor is unwarranted in this case.   After the trial courts handed down the orders granting summary judgment in favor of MDOT, the plaintiffs settled all of their claims against Great River and voluntarily dismissed the company. Therefore, the plaintiffs had an adequate remedy available to them and have been compensated. This factor contemplates a situation where the plaintiff cannot get any recovery based on the principal-independent contractor shield.   Such is not the case here.

¶12.    The plaintiffs cite numerous cases wherein this Court found summary judgment in favor of MDOT to be premature.   However, in each of those cases, the negligent actions or omissions were attributable to MDOT alone, and not to an independent contractor.   *See* **Miss. Dep't of Transp. v. Cargile**, 847 So. 2d 258, 269 (Miss. 2003) (question remained whether

state itself exercised ordinary care in failing to eliminate a large pool of standing water on the highway); ***Leflore County v. Givens***, 754 So. 2d 1223, 1227-28, (Miss. 2000), *overruled in part on other grounds by **Univ. of Miss. Med. Ctr. v. Easterling***, 928 So. 2d 815, 820 (Miss. 2006) (question remained whether county itself exercised ordinary care in the discretionary placement of its warning signs); ***Jones v. Miss. Dep't of Transp.***, 744 So. 2d 256, 264 (Miss. 1999) (question remained whether MDOT itself knew about its failure to place a stop sign at a T-intersection).[1]  Therefore, these cases are inapposite.  There is no genuine issue of material fact as to Great River's status as an independent contractor.

*The Manual on Uniform Traffic Control Devices (MUTCD)*

¶13.    The plaintiffs devote large portions of their briefs to discussing MDOT's alleged violations of the MUTCD and arguing that MDOT's noncompliance with certain provisions constitutes, in essence, negligence per se.   Thus, the plaintiffs contend that MDOT can be held liable for their injuries despite Great River's status as an independent contractor.   The plaintiffs heavily rely on the following sections of the MUTCD:

**MUTCD § 1A-2**

The Manual presents traffic control device standards for all streets and highways open to public travel regardless of type or class or the governmental agency having jurisdiction.

---

[1] Significantly, the reasoning in both ***Givens*** and ***Jones*** was later questioned by this Court in ***Collins v. Tallahatchie County***, 876 So. 2d 284, 289 (Miss. 2004), wherein we held that the ordinary care standard did not apply to subsection 11-46-9(1)(d) of the MTCA regarding the performance of discretionary functions.

**MUTCD § 1A-3**

> The responsibility for the design, placement, operation and maintenance of traffic control devices rests with the governmental body or official having jurisdiction. . . . [T]raffic control devices placed and maintained by state and local officials are required by statute to conform to a State Manual which shall be in substantial conformance with this Manual. . . . Under authority granted by Congress in 1966, the Secretary of Transportation has decreed that the traffic control devices on all streets and highways in each State shall be in substantial conformance with standards issued or endorsed by the Federal Highway Administrator.

Based on this language, the plaintiffs conclude that responsibility for the design, placement, operation, and maintenance of traffic control and warning devices rested ultimately with MDOT, and not with Great River.

¶14. This Court has often held that the provisions of the MUTCD may be considered by a jury as nonconclusive evidence of negligence. However, the plaintiffs would have us radically alter that standard and use language found in the MUTCD to establish, as a matter of law, that MDOT is responsible for the torts of its independent contractor, Great River. Although Mississippi has not adopted the MUTCD, its provisions and guidelines are advisory in nature to a finder of fact. They have no significance, however, with respect to questions of law. Highway 61 has been designated a state highway and is, therefore, under the jurisdiction of the Mississippi Transportation Commission for construction and maintenance. Miss. Code Ann. § 65-3-3 (Rev. 2001).

¶15. Alleged violation of a provision of the MUTCD is one fact to be considered in determining whether a defendant violated the standard of care. *See Donaldson v. Covington County*, 846 So. 2d 219, 223 (Miss. 2003); *Jones v. Panola County*, 725 So. 2d 774, 778 (Miss. 1998). The MUTCD becomes a tool for assessing a breach of duty only after a legal

duty has already been established. It cannot be used to **create** a legal obligation under Mississippi law. Therefore, we agree with the Court of Appeals that MDOT's alleged violations of the MUTCD do not constitute negligence per se, and the plaintiffs cannot use the MUTCD as a method of circumventing Great River's independent contractor status to hold MDOT liable.

*Potential non-delegable duty to protect the public's safety*

¶16. The general rule that a principal is not liable for the torts of its independent contractor has two notable exceptions. The first is that a principal can be held liable for injuries to a third party "'caused by the failure of an independent contractor to exercise due care with respect to the performance of work which is inherently or intrinsically dangerous.'" ***Spruill v. Yazoo Valley Oil Mill, Inc.***, 317 So. 2d 410, 413 (Miss. 1975) (quoting ***Corban v. Skelly Oil Co.***, 256 F.2d 775, 780 (5th Cir. 1958)). The second exception applies where the principal has a non-delegable duty. ***City of Laurel v. Upton***, 253 Miss. 380, 395, 175 So. 2d 621, 626 (1965). However, because the plaintiffs did not present either of these arguments, we shall not consider them. ***King v. State***, 857 So. 2d 702, 717 (Miss. 2003) (possible error waived for failure to make argument in support of the issue).

¶17. The plaintiffs may not hold MDOT liable for the negligence of its independent contractor, Great River. The trial courts properly granted summary judgment in favor of MDOT on this basis.

## II. Whether the plaintiffs have alleged sufficient facts to hold MDOT liable for its own conduct.

¶18. We must determine whether the plaintiffs have presented any triable issue of fact which would establish liability for MDOT's own conduct. Unless the plaintiffs can produce some evidence that MDOT or its employees committed some negligent act, MDOT cannot be held liable.

¶19. The elements of a negligence claim are duty, breach of that duty, proximate cause, and damages. *May v. V.F.W. Post 2539*, 577 So. 2d 372, 375 (Miss. 1991). However, none of the plaintiffs' allegations arise from any duty or breach of duty by MDOT. MDOT was responsible for developing the Traffic Control Plan, and Great River was responsible for implementing it. We agree with the Court of Appeals that there is no genuine issue of material fact whether the Traffic Control Plan met the accepted engineering or design standards at that time. Despite their claim that Lieutenant David Beard's testimony on accident reconstruction would show otherwise, the plaintiffs have not produced evidence that actually contradicts MDOT's evidence that the plan conformed to accepted engineering or design standard when it was approved.

¶20. By contract, Great River was required to faithfully implement the provisions of the Traffic Control Plan. Additionally, MDOT's inspectors could not act as "foremen" on these projects. Instead, they reported the project's progress to the MDOT project engineer. The plaintiffs rely on a report by MDOT inspector George Germain from March 18, 1999, where he noted the need for additional lights and barrels at the construction area. However, according to Germain's testimony, this information was relayed to MDOT's independent contractor,

Great River, the entity who was responsible for complying with the requirements of the traffic control plan. While subsequent reports did not specifically note the addition of the lights and barrels, every report from Germain until Friday, April 9, 1999, and after the accident on April 12, 1999, and from resident engineer Wes Stafford after the accident on April 14, 1999, stated that the construction site complied with the Traffic Control Plan.

¶21. All of the evidence points to negligence by Great River, MDOT's independent contractor. Great River was responsible for the installation and maintenance of signage and warning devices and for debris removal from areas traveled by the public. This construction project was executed by Great River's employees, and the plaintiffs have presented no evidence that MDOT's employees committed any act or omission that led to the accident. We cannot look to apply the immunity provisions of the MTCA unless some wrong by the government is first established, and the requisite negligence cannot be established here. The Court of Appeals erred in automatically analyzing this case under the MTCA without first determining whether MDOT's conduct could lead to liability in the first place. Therefore, the Court of Appeals's judgment reversing the trial courts' grants of summary judgment in favor of MDOT is, itself, reversed.

### III. Whether MDOT may avoid liability through the application of sovereign immunity.

¶22. Because we have established, as a matter of law, that Great River was MDOT's independent contractor and that no conduct by MDOT can serve as grounds for independent liability, we need not engage in any analysis of the sovereign immunity issue. Based on the discussion above, the plaintiffs have presented no genuine issue of material fact regarding

MDOT's liability, given the status of Great River as an independent contractor and the lack of negligence by MDOT or its employees.

## CONCLUSION

¶23.   For these reasons, we reverse the judgment of the Court of Appeals and affirm the judgments of the trial courts granting summary judgment in favor of MDOT.

¶24.   **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED, AND THE JUDGMENTS OF THE CIRCUIT COURT OF SHARKEY COUNTY ARE REINSTATED AND AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, CARLSON AND RANDOLPH, JJ., CONCUR.  GRAVES, J., CONCURS IN RESULT ONLY.  EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**