KITCHENS, Justice,
dissenting:
¶ 31. Under the majority’s holding, an injure'd worker and a bereaved wife and daughter are denied any possibility of relief. Because I believe that our law ought to, and does, grant relief in this unusual situation, and because the ramifications of the majority’s decision would tend to encourage reckless and irresponsible dealings between governmental entities and their contractors, I respectfully dissent.
¶ 32. It is undisputed that, without their being able to sue the City, David Mooneyhan’s surviving wife and daughter, along with Bertram Hill, will be barred from compensatory relief of any kind. Phillips, the contractor, did not have workers’ compensation insurance[2] or general liability insurance, and is, effectively, judgment proof. Nevertheless, the majority holds that Phillips was an independent contractor of the City of Horn Lake (“the City”), without consideration of an important element of a legitimate, and, I believe, appropriate, common law analysis of such a relationship which would allow this Court to recharacterize the relationship between Phillips and the City. “Even if a contract clearly evinces the parties’ settled intent to create a principal-independent contractor *682 relationship, when a third party is adversely affected, this Court can look beyond the contract to determine whether public policy requires recharacterization of the relationship to allow the injured party to recover.” Chisolm v. Miss. Dep’t of Transp., 942 So.2d 136, 142 (¶ 10) (Miss.2006). While such a power initially may seem extreme, the Court was careful to note that it could do so only where “the party challenging the claimed relationship will be adversely affected, and denied an adequate legal remedy.” Richardson v. APAC-Mississippi, Inc., 631 So.2d 143, 150 (Miss.1994) (emphasis added). ”
¶33. The majority’s unwillingness to analyze the Richardson public policy factor due to the plaintiffs’ failure to present the argument to the trial court[3] is incorrect in light of the-fact that the factor is but one of several implicit in the balancing test used to determine independent-contractor status. The Court in Richardson clearly explained that the policy consideration factor, which I find dispositive in the case before us, was “another factor in the balancing test....” Richardson, 631 So.2d at 150. Accordingly, when the trial court determined that Phillips was an independent contractor of the City without analyzing an important factor in the balancing test, the trial court committed error. This was not some extra consideration that the plaintiffs were required to argue before the trial court, but a factor implicit in the consideration of independent-contractor status that the trial court was bound to consider. The trial court erred as a matter of law, and we are well within our purview to review that error.
1t 34. The availability of other avenues for relief to a plaintiff has been a factor that this Court often has considered in finding an independent-contractor relationship. In Richardson, the Court found that the plaintiff never claimed that relief was unavailable from the independent contractor and, in fact, had entered into a settlement with the independent contractor’s insurance carrier. Id. at 151. In Chisolm, we held that “Application of the ‘public policy’ factor [was] unwarranted[,]” because the plaintiffs, after being denied relief against the Mississippi Department of Transportation, settled with the independent contractor involved and dismissed it from the case. Chisolm, 942 So.2d at 142 (¶ 11). Therefore, the plaintiffs in that case had an adequate remedy at law. The Court noted that the public policy factor “contemplates a situation where the plaintiff cannot, get any recovery based on the principal-independent contractor shield.” Id. As the plaintiff did obtain at least some relief in that case, the factor was irrelevant.
¶ 35. The facts of this case, on the other hand, cry out for its application. One man is dead, leaving behind a wife and minor child, and another man is seriously injured. The only party who can be sued directly is, effectively, judgment proof, to say nothing of the fact that Phillips indisputably was” egregiously negligent in digging this trench.[4] If the plaintiffs are prevented *683 from pursuing civil actions against the City, they will have no hope of relief. This is “a situation where the plaintiff[s] cannot get any recovery based on the principal-independent contractor shield.” Id. The majority pays lip service to this concept, but goes no further. Indeed, in this case, the callous indifference of the City in its failure to hire an insured contractor is the reason the plaintiffs have no viable path to relief. I would find that the complete lack of availability or even the possibility of a legal remedy to the plaintiffs allows this Court to recharacterize the relationship between Phillips and the City.
¶ 36. Moreover, the history of the City’s dealings with Phillips reveals a lackadaisical approach to maintenance and construction contracts, with little oversight, or, it would seem, little motivation or effort on the City’s part to see that Phillips conducted his business in a safe and responsible manner. In response to requests for admission, Phillips answered, “Phillips had no written contracts with [Horn Lake] for any projects performed by Phillips[.] Any projects were performed on a cost plus basis and invoiced when the project was completed.” (Emphasis added.) One of those past projects was valued at $100,000. The history of slipshod contracting between Phillips and the City suggests that their interaction in the circumstances before us may be but one component of an established pattern of very informal conduct. Although the majority finds that the issue of any potential violation of the bidding statutes is moot, I believe that the City’s potential violation of the bidding statutes, in light of its history with Phillips, weighs against a finding that there existed an independent-contractor-relationship. If the City can be allowed to relax its compliance with the laws regarding contracts for public works projects, then the law’s treatment of its relationship with its contractors ought to be relaxed as well.
¶37. Further, it must be noted that the very nature of “cost-plus” contracting renders any protections offered by Mississippi Code Section 81-5-51(7) meaningless. As stated by the majority, that section requires construction or public works contractors to provide proof of general liability insurance to the contracting municipality when the contract between the two exceeds $25,000. Miss.Code Ann. § 31-5-51(7) (Rev. 2010). Under a cost-plus contract, the two parties may contract for any amount they choose, and once costs have gone over that amount, the contractor may simply submit invoices to the municipality for any additional costs. It is obvious that savvy contracting parties can sign a contract for an amount below the threshold value of $25,000, and thus avoid the requirements of Section 31-5-51(7), even where the actual cost of the work may greatly exceed that amount. Thus, municipalities and contractors can enter into a convenient “don’t ask, don’t tell” arrangement that shields both from, liability under the statute, that ensures that contractors without insurance still get work, and that permits municipalities to give contracts to the lowest bidder without having to ask why the contractor can do his work so cheaply.[5]
*684 ¶ 88. By forbidding the plaintiffs’ suit in this case, the majority — unintentionally, I am sure — incentivizes municipalities and other governmental entities to hire fly-by-night, uninsured contractors, knowing that the governmental entity, clothed with immunity, will bear no. legal responsibility for injury or death caused by such a contractor’s negligence, no matter how egregious or how devastating. As such operations often are the cheapest, there is little or no motivation for local governments to determine whether their contractors are solvent, insured, or competent. In fact, the incentive lies in the other direction. As such, uninsured contractors may remain more or less judgment proof, the only parties left bearing losses not of their own making are those injured by the negligent activities of such contractors. To put it simply, this is not fair.
¶ 89. This Court should not' ignore or be oblivious to the repercussions of the majority’s decision. If it stands, the bereaved wife and daughter of David Moo-neyhan will have no chance for a legal remedy for the grievous injury done them.[6] The injured Bertram Hill has no means of remediation of his injury. This factor should outweigh the other aspects utilized by this Court to determine the relationship between Phillips and the City. When a principal hires an independent contractor to do dangerous work, without determining whether that contractor has the ability to compensate persons who may be injured, and doing so completely denies relief to injured parties, this Court should recharacterize the relationship to allow relief. The language of our precedent, as enshrined in Chisolm and Richardson, and justice itself, demand such a process.
¶ 40. Let us not forget: this was a terrible tragedy. A family was destroyed. David Mooneyhan, a working husband and father, was buried alive and crushed to death at the bottom of a sewage pit. His wife and daughter will receive no compensation for their loss. Bertram Hill was buried alongside Mooneyhan, close enough to touch his head with his hand. He heard Mooneyhan gasping for breath until he died. Hill remained buried for several hours until rescuers reached him. He will receive no compensation for his injuries. The City of Horn Lake had orally contracted with an uninsured contractor to perform dangerous sewage system work. Phillips, the contractor, did not have to account for either workers’ compensation insurance or general liability insurance in his overhead costs, and so was able to perform this work relatively cheaply. The City of Horn Lake either did not know or did not care that Phillips was uninsured. A husband and father is dead, another man is seriously injured, and the city that hired an uninsured, negligent contractor without regard to the contractor’s insurance coverage won’t have to pay a dime. The majority’s conclusion is utterly devoid of justice.
¶ 41. I would reverse the trial court’s grant of summary judgment and remand for a trial against the City of Horn Lake. The majority ignores a vital component of our common law jurisprudence on the principal-independent contractor relationship. This Court has stated plainly that, where the plaintiff cannot obtain relief due to “the principal-independent contractor shield,” then we may recharacterize the relationship in the interest of public policy. *685 Chisolm, 942 So.2d at 142 (¶ 11). I find this factor to be dispositive. The City hired someone who violated federal regulations and failed to maintain insurance against the possibility of his conduct’s hurting someone. The majority would in-centivize the repeat of such behavior, as there is no liability for the City of Horn Lake for acting as it did.
¶42. The justices who comprise the majority are honorable and dedicated public servants who did not set out to create such an untoward and malevolent outcome in the lives of the innocent victims of this tragedy. Nevertheless, the outcome, in my view, is unnecessarily harsh and it is altogether unjust, so much so that I am unable to concur in it, especially when Mississippi law, as outlined above, provides a path toward a legitimate legal remedy for the victims. I therefore respectfully dissent.
KING, J., JOINS THIS OPINION.

. The appellants’ brief informs us that Hill and Mooneyhan were “the only two (2) employees of Phillips” when the accident occurred. Phillips, the contractor, employed fewer than five people, and thus was not required by law to carry workers’ compensation insurance. See Miss.Code Ann. § 71-3-5 (Rev. 2011).

. This itself is debatable. In the hearing on the motion for summary judgment, while arguing about Phillips's failure to provide proof of insurance, counsel for the plaintiffs stated, "Phillips had no insurance, and these Plaintiffs had absolutely no remedy for the wrongs that have occurred to them if this is allowed to proceed otherwise." (Emphasis added.)

. It is undisputed that Phillips was found to have violated several federal regulations, including having his employees work without hardhats, failing to provide cave-in protection for the trench, failing to train his employees to recognize the dangers of a cave-in, failing to secure the large tree next to the excavation which actually caused the cave-in, keeping the excavated dirt pile directly adjacent to the excavation, failing to place a ramp or ladder *683 inside the hole for the workmen to use, and failing to shore up the walls of this seventeen-foot deep trench.

. Of course, all of this is rendered moot by the majority's determination that the burden lies upon the contractor to provide proof of insurance, and not on the municipality to require that the contractor be insured. I reject that proposition as well. I can think of no reason why any principal should not have the burden of ensuring that any contractor it hires has sufficient general liability insurance, especially if the contractor is small enough *684 not to be required to carry workers' compensation insurance.

. Mooneyhan was being paid ten dollars per hour for his work for Phillips. Without his income, where are his wife and daughter to turn? Will it be the taxpayers of this State who help to support them?